THE CITY OF TOPEKA v. ROY CRAWFORD.

No. 15,900.  (96 Pac. 862.)

SYLLABUS BY THE COURT.

1. CITIES AND CITY OFFICERS—*Ordinances—Publication.* Where the revised ordinances of a city of the first class are published in a book by authority of the city, an ordinance embraced in such book in which it is provided that it shall take effect upon such publication is sufficiently published, and will take effect accordingly, if more than fifty copies of such book are issued.

2. CRIMINAL LAW—*Complaint—Date of Alleged Offense.* A complaint for the violation of an ordinance relating to labor

on Sunday which alleges that the offense was committed on the —— day of October, 1907, on the first day of the week, commonly called Sunday, is sufficiently specific as to time.

3. —— *Violation of Sunday Labor Law.* To keep open, manage and superintend a theater and sell tickets therein on Sunday is labor within the meaning of an ordinance which provides that "every person who shall either labor himself, or compel his apprentice, servant or any other person in his charge or control to labor or perform any work other than the household offices of daily necessity, or other work of necessity or charity, on the first day of the week, commonly called Sunday, shall be deemed guilty of a misdemeanor."

Error from Shawnee district court; ALSTON W. DANA, judge. Opinion filed July 3, 1908. Affirmed.

*F. G. Drenning,* city attorney, and *W. C. Ralston,* assistant city attorney, for appellee.

*Z. T. Hazen,* and *R. H. Gaw,* for appellant.

The opinion of the court was delivered by

BENSON, J.: The defendant was convicted under a city ordinance which provides:

"Every person who shall either labor himself, or compel his apprentice, servant or any other person in his charge or control to labor or perform any work other than the household offices of daily necessity, or other work of necessity or charity, on the first day of the week, commonly called Sunday, shall be deemed guilty of a misdemeanor, and on conviction thereof fined in any sum not less than two dollars nor more than twenty-five dollars for each offense; provided, this section shall not extend to any person who is a member of any religious society by whom any other than the first day of the week is observed as the Sabbath, so that he observes such Sabbath."

The complaint was as follows:

"That on the —— day of October, 1907, in the city of Topeka, in the county of Shawnee and state of Kansas, one Roy Crawford did wilfully, wrongfully, maliciously and unlawfully open, superintend and manage a public theater, and give dramas, comedies, tragedies,

burlesque, minstrel and vaudeville shows and various other theatrical entertainments and performances, and did sell tickets of admission therefor varying in price from ten cents to one dollar and fifty cents, and, as such manager of such public theater, did compel his servants and employees under his charge and control, to wit, stage-carpenters, stage-hands, janitors, ushers and ticket sellers, to labor and to perform work—and such labor and work performed was other than the household offices of daily necessity, or other work of necessity or charity—on the first day of the week, commonly called Sunday."

An objection is made to the ordinance that it was never published as required by law. The facts concerning the publication are that, preparatory to the compilation and publication in book form of the ordinances of the city, the mayor and council revised certain ordinances and enacted others, each containing a provision that it should take effect upon publication in such ordinance book. Among these was ordinance No. 2615, defining certain public offenses, known as the misdemeanor ordinance, prescribing penalties for a large number of offenses usually classified under that name. Section 102 of that ordinance defines the offense upon which appellant was tried, and is quoted above. A former revision and publication, known as the Revised Ordinances of 1888, contained a misdemeanor ordinance, section 65 of which was substantially the same as section 102 of the present ordinance, with a change in the penalty, and omitting a clause relating to ferrymen. This ordinance, No. 2615, was passed June 30, 1905, and approved July 6, 1905. On October 6, 1905, another ordinance providing for the publication of the revised ordinances of the city in book form was duly published and took effect, and the book containing the ordinances of the city of a general nature was published accordingly. Among the ordinances contained therein was the misdemeanor ordinance No. 2615, containing the revised section 102, under which defendant was prosecuted. An edition of 500 copies

was thus printed by authority of the city and turned over to the city clerk on or before December 1, 1905, at which date that officer certified that such revised ordinances, not previously published in the official city paper, took effect. This certificate appears in the book. The law governing cities of the first class provides:

"That when the council of said city shall order a revision of the ordinances of said city, a publication in the book of ordinances shall be deemed a publication under this act; provided, further, that no less than fifty copies of such book shall be published."

"All ordinances of the city may be proved by the certificate of the clerk, under the seal of the city, and when printed or published in book form, and purporting to be published by authority of the city, shall be read and received in evidence in all courts and places without further proof.

"The city may from time to time authorize the revision of the ordinances and their publication in book form, and may cause to be published in connection therewith the laws relating to cities of the first class, and such forms and instructions as may be deemed advisable." (Laws 1903, ch. 122, §§ 191, 194, 195.)

The civil code contains this provision:

"Printed copies of the ordinances, resolutions, rules, orders and by-laws of any city or incorporated town in this state, published by authority of such city or incorporated town, and manuscript copies of the same certified under the hand of the proper officer, and having the corporate seal of such city or town affixed thereto, shall be received as evidence." (Civ. Code, § 379.)

The precise contention of the defendant is that ordinance No. 2615 is not a revision, but an original ordinance, and therefore not within the purview of section 195 of the Laws of 1903, above quoted. This is a mistaken view. The ordinance is a revision; but if it were not, when the city undertook to revise and compile its ordinances generally a new ordinance designed to be included in, and to be a part of, such general revision would have been within the statute, and when

published in the book of ordinances would thereupon take effect and be in force.

Objection is also made to the complaint because the precise date of the alleged offense is not stated. It was stated, however, that it was committed on Sunday, and in the month of October, 1905. The precise date is immaterial. (Crim. Code, § 105.) The gravamen of this offense is laboring on Sunday, and that is charged definitely. (*The State v. Brooks*, 33 Kan. 708, 7 Pac. 591; *The State v. Nesbit*, 8 Kan. App. 104, 54 Pac. 326.) The complaint is sufficient.

The defendant contends that the evidence was insufficient because it did not prove the charge that he himself labored on Sunday, nor that he compelled his employees to do so. The complaint charges that the defendant opened and managed a theater, gave shows and entertainments therein, and sold tickets therefor, on Sundays, and does not otherwise charge that he performed labor himself, although it does directly allege that he compelled his servants and employees to labor on that day. The defendant does not question the authority of the city to enact the ordinance, and he does not dispute its validity otherwise than in questioning its proper publication. We have therefore only to consider whether he has violated it. To this end we must inquire in what sense the word "labor" is used in the ordinance and, incidentally, in the state statute which it follows. Similar statutes have been enacted in other states. They differ in phraseology, and this must account in part for an apparent diversity in the decisions. Some prohibit ordinary business or following usual vocations as well as labor. This ordinance refers only to labor. The sense in which this word is used in statutes depends upon the legislative intent, in view of the object to be accomplished, as well as upon the particular language employed.

In *M. K. & T. Rly. Co. v. Baker*, 14 Kan. 563, it was held that a timekeeper was not a laborer within the

purview of a statute requiring railroad companies to give bonds to pay laborers, and in *The State, ex rel., v. Martindale,* 47 Kan. 147, 27 Pac. 852, it was decided that the restrictions of the statute making it unlawful for laborers, workmen, mechanics and others employed by the state to work more than eight hours a day did not apply to the warden, clerks and other officers of the penitentiary. Other courts have held that the exemption of the wages of a laborer protected only the earnings of those engaged in toilsome occupations. The object of this ordinance is quite different; it is to secure that opportunity for rest which, from the experience of mankind and the consensus of opinion, is believed to be for the highest good of the individual and the state. This matter was under consideration in an early case in Pennsylvania, wherein the court said:

"All agree that to the well-being of society periods of rest are absolutely necessary. To be productive of the required advantage, these periods must recur at stated intervals, so that the mass of which the community is composed may enjoy a respite from labor at the same time. They may be established by common consent, or, as is conceded, the legislative power of the state may, without impropriety, interfere to fix the time of their stated return and enforce obedience to the direction. When this happens, some one day must be selected, and it has been said the round of the week presents none which, being preferred, might not be regarded as favoring some one of the numerous religious sects into which mankind are divided. In a Christian community, where a very large majority of the people celebrate the first day of the week as their chosen period of rest from labor, it is not surprising that that day should have received the legislative sanction." (*Specht v. Commonwealth,* 8 Pa. St. 312, 323, 49 Am. Dec. 518.)

A statute of Ohio prohibited "common labor" on Sunday. Commenting on this statute Mr. Justice Thurman said:

"Wisdom requires that men should refrain from labor at least one day in seven, and the advantages of

having the day of rest fixed, and so fixed as to happen at regularly recurring intervals, are too obvious to be overlooked. It was within the constitutional competency of the general assembly to require this cessation of labor, and to name the day of rest. It did so by the act referred to, and, in accordance with the feelings of a majority of the people, the Christian Sabbath was very properly selected." (*Bloom v. Richards,* 2 Ohio St. 387, 391.)

In the same opinion, after saying that the word "labor" is usually employed to signify manual exertion of a toilsome nature, and holding that it did not embrace the simple making of a bargain, the court was careful to add:

"It is not to be understood, however, that, because a Sunday contract may be valid, therefore business may be transacted upon that as upon other days; as, for instance, that a merchant, not of the excepted class, may lawfully keep open store for the disposition of his goods on the Sabbath. To wait upon his customers, and receive and sell his wares, is the common labor of a merchant, and there is a broad distinction between pursuing this avocation and the case of a single sale out of the ordinary course of business." (Page 402.)

The evidence shows that the defendant regularly kept open and managed his theater, gave orders and directions to the employees on and about the stage, and to drivers in his employ who received from and returned to the railroad stations the baggage, scenery and paraphernalia of the traveling troupes, and that he sold the tickets for exhibitions, on Sunday. These manifold duties necessarily required some manual labor, although not of the kind usually classed as toilsome within the meaning of statutes such as those first referred to. If to keep open a store and receive and sell wares therein is the common labor of a merchant, it is fair to say that to keep open, manage and superintend a theater and sell tickets therein is the labor of such manager, and if we keep in mind the object of these regulations we will see that the reason

of the rule applies quite as forcibly to the theatrical manager as to the merchant.

Under a statute prescribing a penalty for engaging in any labor on Sunday, except works of necessity, charity or mercy, the selling of liquor on that day was held to be prohibited in a very vigorous opinion, affirmed on rehearing. (*Cortesy v. Territory,* 6 N. M. 682, 30 Pac. 947, 19 L. R. A. 349.) It should be noticed that the prosecution was not for violation of the liquor or dram-shop act, but for engaging in labor on Sunday. In New York the usual duties of an attorney's clerk were held to be embraced within the statute prohibiting "working" on Sunday. (*Watts v. Van Ness,* 1 Hill [N. Y.] 76.) In the federal supreme court, where the question arose whether an overseer who was charged with the general control and direction of the work and development of a mine was within the protection of a statute of Utah giving a lien to persons who should "perform any work or labor" upon a mine, it was decided that he was entitled to the lien. (*Mining Co. v. Cullins,* 104 U. S. 176, 26 L. Ed. 704.) The court said:

"He was the overseer and foreman of the body of miners who performed manual labor upon the mine. He planned and personally superintended and directed the work, with a view to develop the mine and make it a successful venture. His duties were similar to those of the foreman of a gang of track-hands upon a railroad, or of a force of mechanics engaged in building a house. Such duties are very different from those which belong to the general superintendent of a railroad, or the contractor for erecting a house. Their performance may well be called work and labor; they require the personal attention and supervision of the foreman, and occasionally in an emergency, or for an example, it becomes necessary for him to assist with his own hands." (Page 177.)

While this case may go farther than this court has gone in the application of similar provisions, the lan-

guage above quoted is quite pertinent to the present case.

Our attention has been directed to but one case where the labor was of the precise nature of that performed by the defendant. In *Quarles v. State,* 55 Ark. 10, 17 S. W. 269, 14 L. R. A. 192, the defendant was charged with violating a statute providing a penalty for any person "who shall on . . . Sunday be found laboring," etc. (Page 10.) The proof was that the defendant performed the same duties as those charged and proved against the defendant in this case, and it was held that opening, superintending and managing a public theater, and giving a theatrical entertainment and selling tickets therefor, was labor within the meaning of the statute, and the conviction was affirmed.

Many decisions have been made upon the general subject, and they may not all be in perfect harmony, but we hold in accord with those quoted above that the defendant, in managing his theater, selling tickets, and performing the work on Sunday charged in the complaint and proved on the trial, violated the ordinance. It is not necessary to inquire whether in employing and directing the work of laborers in and about the theater he "compelled" them to labor within the meaning of the ordinance.

The judgment is affirmed.