THE STATE OF KANSAS, *ex rel. Fred S. Jackson, as Attorney-general, etc., and John J. Schenck, as County Attorney, etc., Appellee,* v. W. S. LINDSAY *et al., Appellants.*

No. 17,111.

SYLLABUS BY THE COURT.

NUISANCE—*Private Asylum for Insane—License—Injunction.* Where a statute prohibiting the establishment of asylums or retreats for the care of the insane or persons of unsound mind for compensation and hire without first obtaining a license from the state board of charities is continuously violated by receiving, keeping, maintaining and caring for persons of the classes named in an unlicensed asylum or retreat, thereby causing fear, consternation and disturbance of the peace in the community, an. injunction may properly be granted to restrain such unlawful acts, and the court is not restricted to a prohibition of disturbances of the peace.

Appeal from Shawnee district court. Opinion filed June 10, 1911. Affirmed.

STATEMENT.

THE appellants, Dr. W. S. Lindsay, Christ's Hospital and others were charged with keeping and maintaining for compensation and hire an insane asylum or retreat in cottages upon the grounds of Christ's Hospital in Topeka without having a license so to do and in violation of the statute. The petition also charged that insane patients in such asylum shrieked, made outcries, exposed their persons, and escaped and attempted to escape; and that the defendants repeatedly, continuously and persistently violated the laws of the state in keeping the asylum or retreat, which is an injury to the public and a common nuisance. The hospital answered alleging that the cottages had been placed in the charge of Dr. Lindsay as a part of the hospital for the treatment of persons afflicted with nervous diseases under rules which it had prescribed, and that the hospital is a humane institution and not a nuisance. Dr. Lindsay answered by a general denial.

The state offered evidence in support of all the material allegations of the petition, and the court found:

"That persons who are mentally deranged, of unsound mind, and who are insane, have been received into said cottages, there kept, maintained and cared for by the defendants, with full knowledge that they were insane.

"That inmates of said asylum have cried out, screamed and made noises day and night which have disturbed the peace of that community and of the general public.

"That such insane persons have frequently escaped from said cottages clad only in their nightclothes, causing great fear and consternation to the public, disturbing the peace and quiet thereof.

"And the court further finds that said cottages as conducted are common nuisances and should be abated."

Thereupon judgment was entered "that Christ's Hospital, Dr. W. S. Lindsay, James P. de Bevers Kaye and Dr. J. C. McClintock, their agents, servants, representatives and employees, be and they are each hereby jointly and severally restrained and perpetually enjoined from keeping, maintaining or operating or using said cottages as an asylum or retreat for persons who are insane, mentally deranged or of unsound mind, *and said defendants, their agents, employees, servants and representatives are perpetually restrained and enjoined from receiving into said cottages, keeping, maintaining, caring for or treating therein, persons who are insane or mentally deranged or of unsound mind*, and from managing or conducting said cottages so as to in any other way disturb the peace and quiet of that community."

The appeal is only from that part of the judgment printed above in italics.

*Z. T. Hazen, R. H. Gaw, J. G. Slonecker*, and *D. P. Lindsay*, for the appellants.

*John S. Dawson*, attorney-general, and *S. N. Hawkes*, assistant attorney-general, for the appellee; *Leonard S. Ferry*, and *Thomas F. Doran*, of counsel.

The opinion of the court was delivered by

·BENSON, J.: The contention of the defendants is that the judgment is too broad.  It is said in their brief:

"If the trial court had gone no further than to enjoin the appellants from operating these cottages in such a way as to disturb the peace and quiet of the community we would not be in this court complaining of the judgment; but when the judgment perpetually enjoins them from receiving and treating persons who are mentally deranged or of unsound mind, regardless of whether the presence of the patient or the treatment given is objectionable or not, then we submit that the court has gone beyond what the law authorizes."

It is claimed that the court had no authority to enjoin the defendants absolutely from receiving and treating the insane, persons of unsound mind and those mentally deranged, but only from conducting the place in such a way as to disturb the peace and quiet of the community.  The statute referred to in the petition provides:

"No person or physician shall establish or keep a hospital, asylum, institution or house or retreat for the care, custody or treatment of the insane or persons of unsound mind, for compensation and hire, without first obtaining a license therefor from the state board of charities and corrections.  This section shall not apply to hospitals, asylums or institutions established and conducted by the state or county; and provided also, that it shall not apply to cases where an insane person is detained and treated in his own home or that of some relative or friend.  Every application for such license shall be accompanied by a plan of the premises to be occupied, to be drawn on a scale of not less than one-eighth of an inch to the foot, with a description of the situation thereof, and the length, breadth and height, and reference by figure or letter to rooms and departments therein, and a statement of the quantity of ground, exercise and recreation of patients proposed to be received therein, and also a statement of the number of patients to be received therein, and whether the license so applied for is for the reception of male or

female patients, or both, and if for the reception of both, what number of each sex proposed to be received into such house, and of the means by which the one sex may be kept distinct and apart from the other." (Laws 1901, ch. 353, § 81, Gen. Stat. 1909, § 8493.)

A violation of the act is declared to be a misdemeanor and to be punishable by a fine.

This is the statute which it was alleged the defendants repeatedly, continuously and persistently violated; and this allegation was supported by the evidence, and the institution so maintained in violation of this statute was conducted, as the court found, in such a manner that its inmates cried out, screamed and made noises by day and night, and they escaped clad only in nightclothes, causing great fear and consternation, and the peace and quiet of the community was disturbed. To prevent the continued violation of law, attended by these evil consequences, the injunction was granted.

The legislature has declared that institutions for the care and treatment of the insane for compensation should not be established without a license from the proper officers of the state having the care and oversight of the unfortunate, which license should be issued only upon a showing of suitable plans and facilities which the board may deem adequate for such an important undertaking. This statute, we may presume, was designed for the protection of those in need of humane care, and also to protect the public from the danger, consternation and disturbance incident to inadequate facilities or inefficient administration in private unlicensed institutions.

The cries of the mentally unbalanced and deranged and danger from their irresponsible acts are calculated to and do cause apprehension and distress, although no actual physical harm be done. Hence the wisdom of the statute in seeking to secure proper places and facilities for the proper treatment of these unfortunate people and the importance of obedience to its requirements.

The State v. Lindsay.

It has often been broadly stated that an injunction will not lie to prevent the commission of a crime or penal offense, but this is subject to important qualifications. The remedy has been upheld in some situations where the act enjoined was criminal.

"It is true that ordinarily a court of equity will decline to issue an injunction to restrain the commission of a crime; but a continuing injury to property or business may be enjoined, although it may also be punishable as a nuisance or other crime." (*Vegelahn v. Guntner*, 167 Mass. 92, 99.)

Courts of equity are reluctant to use the process of injunction where the remedy by indictment or information is efficacious, but will not hesitate where the remedy is not adequate and it is necessary to protect the rights of the public or an individual. A court is not powerless to prevent the doing of an act merely because it is denounced as a public offense. (*In re Debs, Petitioner*, 158 U. S. 564; *The North American Ins. Co. v. Yates*, 116 Ill. App. 217; *The Columbian Athletic Club v. State, ex rel. McMahan*, 143 Ind. 98; *Commonwealth v. McGovern*, 25 Ky. Law Rep. 411; *State ex rel. v. Canty*, 207 Mo. 439.) A related subject is considered in *The State v. Snelling*, 71 Kan. 499.

It is a well-recognized principle that when a place is a public nuisance its maintenance may be enjoined at the suit of the public prosecutor although its maintenance is subject to criminal prosecution. (5 Pom. Eq. Jur., 3d ed., § 479.) If it should be conceded that the mere maintenance of this retreat for the insane in violation of law, without the offensive sounds and sights referred to in the findings, would not be a nuisance, and therefore not within this rule, then it should also be observed that the right of the government to restrain violations of penal statutes is not confined strictly to cases of nuisance but is extended to analogous cases. (5 Pom. Eq. Jur., 3d ed., § 480.) The obligation of the government to promote the interest of all, and to prevent the wrongdoing of one resulting in injury to the general

welfare, is often sufficient to give it a standing in court to obtain an injunction (*In re Debs, Petitioner,* 158 U. S. 564), and where a statute like the one under consideration is persistently and continuously violated no good reason is perceived why the principle should not apply, although the place (with the offensive sights and sounds removed) should not be held a public nuisance. Indeed it was said by Mr. Justice Valentine, in *The State v. Crawford,* 28 Kan. 726, that "every place where a public statute is openly, publicly, repeatedly, continuously, persistently and intentionally violated is a public nuisance." (p. 733.) It may not be necessary, however, to go to that length in order to uphold the clause in the decree objected to. Whether the place would be a public nuisance or not if the offensive sights and sounds were removed, still the state would have such an interest in enforcing obedience to a law having the beneficent purpose and effect of this statute that it may properly invoke the aid of an injunction to prevent a recurrence of the evil; not merely to prescribe limitations upon the outlawed act, but to prohibit it.

The statute in question having been continuously violated, thereby causing fear, consternation and disturbances of the peace, the injunction was rightfully issued to restrain the defendants from receiving into such unlicensed institution, and from keeping, maintaining, caring for or treating therein, persons of the class or classes named in the statute. In the allowance of injunctions in such a case courts are not restricted to the prohibition of disturbances of the peace; they may prohibit the violation of law or of duty resulting in such disturbances, or evils of the nature stated in the findings in this case. A court can not prescribe how an institution shall be operated which the law declares shall not be operated at all. Without a license there is no right to maintain the retreat, however wise its management.

It was held in *Stotler v. Rochelle,* 83 Kan. 86, that

the establishment of a cancer hospital in proximity to dwellings in a city should be enjoined. It was argued by counsel in that case that if properly managed the hospital would be harmless and therefore should not be enjoined, but the court said:

"The question is not whether the establishment of the hospital would place the occupants of the adjacent dwellings in actual danger of infection, but whether they would have reasonable ground to fear such a result, and whether, in view of the general dread inspired by the disease, the reasonable enjoyment of their property would not be materially interfered with by the bringing together of a considerable number of cancer patients in this place." (p. 91.)

So it may be observed here that with proper management in the future there might be no actual danger from the continuance of this retreat for the treatment of the mentally deranged, but the apprehension and alarm of the community will continue, and it is believed that the public has the right to restrain violations of a statute which, if obeyed, would bring all such institutions under the effective control of the state, and prevent alarms and disturbances in the community.

Nothing in this decision will prevent the future operation of this institution under a license, should one be obtained, and it should be operated so as to avoid the disturbances against which the injunction was granted, or other violation of law.

The judgment is affirmed.