No. 30,546.

THE STATE OF KANSAS, ex rel. GEORGE L. ADAMS, County Attorney, and ROLAND BOYNTON, Attorney-general, *Appellant*, v. META S. BARRON and CHARLES H. BARRON, *Appellees*.

(15 P. 2d 456.)

Opinion filed November 5, 1932.

*Roland Boynton*, attorney-general, *R. O. Mason, Everett E. Steerman*, assistant attorneys-general, and *George L. Adams*, county attorney, for the appellant.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris. George B. Powers, C. T. Smith* and *C. H. Morris*, all of Wichita, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action brought by the state of Kansas,

on relation of the attorney-general and the county attorney of Sedgwick county in the district court of Sedgwick county, to enjoin the defendants from operating a certain talking and moving-picture theater in Wichita on Sundays, which they are alleged to have operated continuously on Sundays for more than a year last past in violation of the Sunday labor and Sunday sales statutes (R. S. 21-952 and 21-955); it being further alleged that the theater for this reason has become a common nuisance and that the application is made to a court of equity because there is no adequate remedy at law. It was and is contended by the state that the operation of the theater openly, publicly, repeatedly, continuously, persistently and intentionally in violation of the Sunday laws is a public or common nuisance and may be enjoined in an action brought by the state. The trial court made findings of fact and concluded that the state was not entitled to an injunction, from which ruling the state has appealed.

Evidence was introduced particularly as to the violation on Sunday, August 2, 1931, in substance as follows: that Charles H. Barron was the owner and that Meta S. Barron was the manager in charge of the theater paying the help; that it was open that day from 2 p. m. until 11 p. m., and persons entering paid twenty cents at the window and entered without tickets being issued; that Meta S. Barron was present and helped, and employees sold admissions at the window, ushered visitants to their seats and operated the film machine; that in front was a sign stating, "open to-day," and giving the name of the attraction; that it had also been open on previous Sundays. These matters were included in the findings of the trial court and also the following additional findings were made:

"The theater was at all times operated in an orderly manner. No disturbance was reported in the crowds attending. No one was allowed in the aisles, but persons could only enter as there were vacant seats.

"No evidence has been offered of a criminal complaint and warrant for violation of the Sunday laws. No arrest has been made and consequently there has not been a trial on that issue.

"No evidence is here offered of immoral or unmoral conduct either on the part of the theater operators or those attending: No injury has been shown to the health of anyone, to anyone's property or comfort, and no interference with the free use of the streets or highways.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"There is no evidence of damage to any person or to the public in general.

"No evidence of a common nuisance is shown other than an allegation that alleged violation of a Sunday law is such a nuisance."

There is no contention in this appeal that the findings of fact are contrary to or are not supported by the evidence. This, therefore, presents the question whether the violation of a criminal statute makes the thing done in connection therewith a public or common nuisance, and particularly does the violation of the Sunday laws of this state in the operation of a theater make the theater a common nuisance, without the intermingling or accompaniment of any of the usual elements which are generally found closely associated with common or public nuisances, the presence of which elements is specifically negatived in these findings. The right of the state to maintain this action is based upon R. S. 60-1121, authorizing the granting of an injunction against a common nuisance in the following language:

"An injunction may be granted in the name of the state to enjoin and suppress the keeping and maintaining of a common nuisance."

Definitions of a common or public nuisance, as given in Bouvier's Law Dictionary and Words and Phrases, have been by this court accepted and quoted with approval in the case of *State v. Coler,* 75 Kan. 424, 89 Pac. 693, as follows:

" 'A public or common nuisance is such an inconvenience or troublesome offense as annoys the whole community in general and not merely some particular person. It produces no special injury to one more than another of the people.' "

" 'A public nuisance is one that injures the citizens generally who may be so circumstanced as to come within its influence. The test as to whether a nuisance is a public nuisance or not is not the number of persons annoyed, but the possibility of annoyance to the public by the invasion of its rights.' " (p. 427.)

No case has been cited by the appellant where an injunction has been granted to prevent the doing of something merely because of the violation of a criminal statute. In all of the cases cited the thing complained of was either made a nuisance by statute or some of the usual troublesome, annoying or injurious elements were found to exist and accompany the violation.

Three of the seven cases cited by the appellant, namely, *State v. Crawford,* 28 Kan. 726; *State v. Rabinowitz,* 85 Kan. 841, 118 Pac. 1040, and *Mugler v. Kansas,* 123 U. S. 623, are actions for injunction against violations of the Kansas liquor law, where the statute (R. S. 21-2130) declares all places where liquor is sold or kept for sale to be common nuisances, and the injunction statute is applicable without any further showing or finding. One other of the cases cited,

*State v. Coler,* supra, was for the violation of a criminal statute (R. S. 21-933) by maintaining a bawdyhouse or brothel, and this court in that case held that the demurrer to the petition for injunction should have been overruled because "the petition is not lacking in a revolting detail of facts, which the demurrer admits to be true, to establish, as a proposition of law, that the building as maintained and conducted was a common nuisance."

The case of *State v. Lindsay,* 85 Kan. 79, 116 Pac. 207, was where an injunction was granted against the keeping and maintaining for compensation of an unlicensed insane asylum in Topeka, causing fear and consternation and disturbing the peace of the community and in violation of a criminal statute (R. S. 65-403), making it a misdemeanor punishable by fine to maintain such. The allegations and evidence plainly showed it to be a common nuisance and it was abated.

The other two cases cited are not concerning the violation of a criminal statute, but are where injunctions have been granted for entirely different reasons. The case of *Stotler v. Rochelle,* 83 Kan. 86, 109 Pac. 988, concerned the granting of an injunction to prevent the operation of a cancer hospital in the residence neighborhood of the city of Kansas City, Kan., in near proximity to dwellings where the residents had reasonable grounds to fear the result from the proximity, the danger of infection, the general dread inspired by the disease and the depreciation of the value of real estate. The last case cited by the appellant on this branch of the case was *State, ex rel., v. McMahon,* 128 Kan. 772, 280 Pac. 906, in which an injunction was granted against the usurious exaction of interest at grossly extortionate rates, from 240 to 520 per cent annual interest, where the wrong was not defined as a crime but it was subject to a penalty of double the amount of the usury collected.

The Coler and the Rochelle cases, *supra,* are the only ones cited where injunctions were granted against the violation of a criminal statute, which were not made common nuisances by statute, and in the former the petition was not lacking in revolting details of facts making the offense a common nuisance, and in the latter the evidence was abundant to support the finding of a common nuisance.

Counsel for the appellant insist that this court in the Crawford case, *supra,* announced a rule by which any violation of a criminal statute could be found to be a common nuisance or not as measured

by that rule which is "that every place where a public statute is openly, publicly, repeatedly, continuously, persistently, and intentionally violated is a public nuisance." (p. 733.) This statement follows the holding that the violation of the liquor law was a statutory nuisance, and this rule does not appear to have since been used in cases involving the violation of other criminal statutes. We conclude that the allegations of the petition and the evidence in support thereof are not sufficient to justify a conclusion that there was a common nuisance by implication. And without a public or common nuisance by a finding of fact or by legal implication the statutory right for equitable relief is wanting, and, besides, there is no showing whatever that the state does not have an adequate remedy at law. It is the universal rule that courts of equity should not grant an injunction unless the remedy at law is inadequate. The following expression was quoted with approval in the opinion in the Rabinowitz case, *supra:*

" 'Courts of equity are reluctant to use the process of injunction where the remedy by indictment or information is efficacious, but will not hesitate where the remedy is not adequate and it is necessary to protect the rights of the public or an individual.' " (p. 850.)

Considering the case at bar in the same light as that case, where it was held the demurrer to the petition should have been overruled, it most certainly would have been overruled if filed in this case, as the petition pleaded a common nuisance and also that there was no adequate remedy at law, but the evidence completely failed as to a common nuisance in the instant case.

In the Crawford case, *supra,* where the rule was announced, as quoted above, for determining whether a violation of a criminal statute might by repetition and persistence become a nuisance, the injunction was denied because there was an adequate remedy at law and the reason assigned for such holding was expressed as follows:

"We should not assume, however, that the statutory remedies are not sufficient for any ordinary case. The legislature has attempted to furnish adequate remedies, and it would certainly not be modest in us to declare that it has not done so until after a fair trial of its remedies has been had, and such remedies found to be insufficient. We should give to the legislature credit for possessing wisdom enough to provide for all ordinary cases; and we should always hold the express remedies given by the legislature to be sufficient until after a fair trial, and until after they were found to be insufficient, except, perhaps, in a few extraordinary and unanticipated cases, where the express remedies provided for by the legislature might be found to be insufficient." (p. 742.)

The case of *State v. Snelling,* 71 Kan. 499, 80 Pac. 966, a mandamus action to compel an officer to issue warrants for the arrest of parties after having been enjoined from doing so, presents the matter from the opposite side, and the duties of the officers under the injunction were not disturbed by the action in mandamus, but in discussing the matter the court said:

"A very great majority of the cases found in the books, where application has been made to a court of equity for injunctions to restrain the prosecution of criminal actions, announce the doctrine that equity courts will not so interfere. . . . The general doctrine is a very just, proper and correct one, and it is almost inconceivable that a court endowed with the high prerogatives of equitable jurisdiction would by their use interfere in the ordinary proceedings of criminal courts." (p. 504.)

It is said in 32 C. J., at page 275:

"In the earliest period of its history the court of chancery assumed to exercise the power of preventing crimes. But the exercise of this prerogative grew less frequent with advancing civilization as the ordinary remedies for the punishment of crime became more effective and acts of lawlessness and violence less common. It is now universally held that, except where there is express statutory authority therefor, equity has no criminal jurisdiction, and acts or omissions will not be enjoined merely on the ground that they constitute a violation of law and are punishable as crimes. Under ordinary circumstances a complete and adequate remedy for the violation of the criminal statutes of a state and of municipal ordinances is afforded by the courts of law; and if a criminal prosecution will constitute an effectual protection against the acts or omissions complained of, no grounds exist for relief by injunction."

In 14 R. C. L. 376 it is said:

"It is now the rule that where acts complained of are violations of the criminal law, courts of equity will not on that ground alone interfere by injunction to prevent their commission, as they will not exercise their powers for the purpose of enforcing the criminal laws by restraining criminal acts."

The following is part of the annotation in 9 A. L. R. 925:

"The rule, apparently well settled, that courts of equity will not interfere by injunction merely to prevent the commission of a crime, has been applied or approved in a number of cases involving alleged violation of Sunday laws, so that it is held, unless the acts complained of constitute a nuisance, or some other ground exists for granting the injunction than that a violation of the law will result unless the writ is granted, injunction will not lie."

We conclude, as did the trial court in this case, that the state has not shown that it is without an adequate remedy at law and therefore the injunction should not be granted.

Another matter argued and presented in the briefs is concerning

the validity and force of the referendum ordinance passed by the city of Wichita attempting to define the word "necessity" contained in the Sunday labor statute (R. S. 21-952). The trial court admitted the ordinance in evidence but held it could not affect in any way the result of the case. The defendants urge that inasmuch as the legislature failed to define this word appearing in the statute, and because by the statute "works of necessity or charity" are exempted from the labor that is forbidden on Sunday, that a definition is necessary, and the local legislative body through the help of the referendum provision might supply that omission. Where definitions of important words contained in a statute are not given by the legislature at the time of the enactment or in a later act, the duty frequently falls upon the courts to construe the section or give a judicial meaning to the word or words in question. That has been done in this case by this court where it held in the case of *Topeka v. Crawford,* 78 Kan. 583, 96 Pac. 862, that to keep open, manage and superintend a theater and sell tickets therein on Sunday is labor within the meaning of the statute. The meaning of the statute includes the meaning of this one word as well as the others therein contained, the meaning of the things exempted as well as the things forbidden. This view was approved and confirmed in the recent opinion in the case of *State v. Kelly,* 129 Kan. 849, 284 Pac. 849. The attempted definition was made by ordinance after this construction had been placed by this court on the word in question as applied to theaters and the ordinance was therefore ineffectual.

The judgment is affirmed.

JOHNSTON, C. J., dissenting upon the grounds stated in the dissent in *State v. Iola Theater Corporation,* post, p. 411, 15 P. 2d 459.