No. 30,849.

THE STATE OF KANSAS, ex rel. FRANK W. TAYLOR, as County Attorney of Allen County, *Appellant*, v. THE IOLA THEATER CORPORATION and VOGEL GETTIER, *Appellees*.

(15 P. 2d 459.)

Opinion filed November 5, 1932.

*Roland Boynton*, attorney-general, *R. O. Mason*, assistant attorney-general, and *Frank W. Taylor*, county attorney, for the appellant.

*Kenneth H. Foust*, of Iola, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action of injunction brought by the state on the relation of Frank W. Taylor, as county attorney of Allen county, against the Iola Theater Corporation and Vogel Gettier, its manager, to enjoin the defendants from maintaining and operating a talking and movie show in Iola on Sundays in violation of the statutes prohibiting the performing of labor and work on Sunday, and prohibiting the sale of goods, wares and merchandise on that day.

The state alleged that defendants had maintained and operated the theater in violation of the Sunday law on January 24, 1932, and on divers Sundays from that day until the present time, and that Gettier and several others named performed labor in connection with its operation and also sold goods, wares and merchandise in violation of the statute, and intended to continue to do so permanently. It is alleged that there is no adequate remedy at law to prevent the violations and that unless an injunction is granted the defendants will continue to so violate the law. The case was tried upon statements and admissions of the parties, with the result that the injunction was denied and that this appeal has been taken by the state.

It appears from the admission and statements upon which the decision was based that Gettier, the manager of the theater, was arrested upon a complaint for the violation of a city ordinance prohibiting the violations of the Sunday law, which was substantially similar to the state law forbidding the performance of labor, except works of necessity or charity, gaming or the sale of goods, wares and merchandise on Sunday. It appears he was convicted of that charge in the latter part of January, 1932, and that later he was charged before a justice of the peace with continuing to operate the theater in violation of the state Sunday law. It was admitted by defendants that they were claiming the operation of a theater on Sunday to be legal and that they would continue to operate it until they were stopped or their right to do so was legally determined. Nothing was produced to show any disorderly conduct on the part of those attending the Sunday shows or of those operating the theater. The state relied alone upon the violation of the statute, claiming that such violation itself constituted a nuisance which a court of equity

could and should enjoin. It is a general rule that courts of equity will not interfere to prevent the commission of a crime, such as the violation of the Sunday law, unless the acts constitute a nuisance or there exists some other ground than the mere violation of a criminal statute.

The question submitted for decision is whether, under the facts stated, a court of equity may interfere and enjoin the operation of the theater. In the case of *State, ex rel., v. Barron,* ante, p. 324, 15 P. 2d 456, the identical question involved in this case was submitted and decided at the same session of court that the instant case was decided, and it was determined in that case that there was an adequate remedy at law, and that an interference of a court of equity to enjoin the operation of the theater on Sunday was not warranted. It is unnecessary to repeat the grounds and views of the court which lead to the judgment there rendered. Following that decision, it must be held that the plaintiff was not entitled to the remedy sought in this case. It appears that the trial court, in a long dissertation as to the conduct of those responsible for the initiation of this proceeding, before entering judgment animadverted upon the action of the county attorney and others in bringing the action against the defendants and taking steps against other violators of the law, and because the county attorney was not seeking to enjoin nor apply the same remedy to others who were engaged in other avocations and who were openly violating the Sunday law. The county attorney frankly admitted his belief that others in the county which the court named were selling goods and doing business on Sunday contrary to the provisions of the Sunday law, but there being urgent opposition to the operation of the theater he had determined to bring this action, and his theory was that a start had to be made some place, and he had chosen to make the start against the operation of Sunday shows in defendant's theater.

Some of the statements made by the court in brief were that it was in favor of the enforcement of the statute, but it must be impartially enforced and, "If the county attorney will prepare a complaint in equity notifying every violator in Allen county—the filling stations, the drug stores, the soda fountains, the jitneys, the cement plants, and the garages—that they are violating this section of the statute and unless they cease doing so action will be instituted in the district court against them, and you then present that proposi-

tion to me, with a pleading broad enough to take them all in, I will sign that order in a minute." The court decided that under the admission made by the county attorney he was not entitled to a decree in this case because of the fact that he admits there are many others in the county and within the jurisdiction of the court violating the statute, and for that reason he is not entitled to an injunction to keep the defendant from violating the same statute.

The reasons given by the court for its judgment are obviously insufficient to warrant the judgment, but that does not of itself require a reversal of the judgment. If a court renders a correct judgment based upon a wrong theory or gives incorrect reasons for the ruling, the correct judgment will stand. In *La Harpe Farmers Union v. United States F. & G. Co.*, 134 Kan. 826, 8 P. 2d 354, it was said:

"It has been decided that a correct decision for which a wrong reason is given is not material error, and the same is true where a court renders a correct judgment upon a wrong theory of the law." (p. 828.)

See, also, *Scattergood v. Martin*, 57 Kan. 450, 46 Pac. 935; *Saylor v. Crooker*, 97 Kan. 624, 156 Pac. 737; *Hess v. Hess*, 104 Kan. 207, 178 Pac. 750; *Chaput v. Demars*, 120 Kan. 273, 243 Pac. 311.

It being determined that the trial court rendered a correct judgment under the facts and the law, the wrong reasons given for its rendition will not operate to disturb the judgment.

The judgment is affirmed.

JOHNSTON, C. J. (dissenting): The court has frequently had occasion to interpret and enforce what is commonly called "the Sunday laws of the state." Uniformly the court has held the law to be constitutional and that those who violate it are subject to punishment. The following are some of those cases: *Topeka v. Crawford*, 78 Kan. 583, 96 Pac. 862; *State v. Weldy*, 113 Kan. 734, 215 Pac. 1005; *State v. Kelly*, 129 Kan. 849, 284 Pac. 363; *State v. Blair*, 130 Kan. 863, 288 Pac. 729; *State v. Haining*, 131 Kan. 854, 293 Pac. 952.

The principal question in the case is whether repeated violations in the future of this valid law may be enjoined. The violations condemned are misdemeanors and only small penalties are prescribed. A maximum penalty for laboring on Sunday is a fine of $25 and for sales on that day the penalty is a fine not to exceed $50. As said in the prevailing opinion, courts of equity are reluctant to use the process of injunction where the remedy by indictment or information is efficacious, citing an authority, but the same authority says:

"Courts . . . will not hesitate where the remedy is not adequate and it is necessary to protect the rights of the public or an individual. A court is

not powerless to prevent the doing of an act merely because it is denounced as a public offense." (*State v. Lindsay,* 85 Kan. 79, 83, 116 Pac. 207.)

Many wrongs which invade the rights of the public or individuals are common nuisances which may be enjoined whether or not it has been specifically declared by the legislature to be a public nuisance. In *State v. Rabinowitz,* 85 Kan. 841, 118 Pac. 1040, it was said:

"At the common law, acts done in violation of the law, or which are against good morals or public decency, and which result in injury to the public, constitute a public nuisance." (Citing 1 Wood on Nuisances, 3d ed. ¶ 17; Joyce on Nuisances, § 5; 6 Cur. Law, 828.)

Either of these wrongs amounts to a nuisance. Violations of the law alone are determined to be a public nuisance. In *State, ex rel., v. Crawford,* 28 Kan. 726, it was said:

"Every place where a public statute is openly, publicly, repeatedly, continuously, persistently and intentionally violated, is a public nuisance." (p. 733.)

The rule of this early case has been consistently followed and applied for the last fifty years, and in my view is a controlling authority here. The facts in the instant case show that defendants are acting in open antagonism to a public statute which makes their conduct a public offense, and that they are doing so repeatedly and intentionally, declaring their purpose to continue the unlawful acts.

The court, in *State, ex rel., v. Crawford,* supra, held that while a single violation might not be a ground for injunction, that where the offense is committed without any immediate prospect of termination, an action of injunction will lie unless some other remedy is given for its complete suppression and extirpation.

Is there another adequate remedy? The only remedy suggested is a prosecution for the violation of the statute. This case demonstrates that prosecutions and even convictions did not operate as a preventative of the violations. They persisted in the wrongdoing and declared their purpose to continue until they were stopped. The small penalties prescribed in the statute for the commission of the offense did not stop them. Probably the profits they had derived from the operation of the theater left a good margin after paying the fines imposed. It is obvious that the penalties for violations were not adequate to prevent the persistent violations by defendant and that their conduct and declared intention to persist in wrongdoing jusified an injunction. It was the only available remedy left for the state and in my opinion should have been granted. See *State, ex rel., v. Crawford,* supra; *State v. Coler,* 75 Kan. 424, 89 Pac. 693; *State, ex rel., v. Raboniwitz,* supra.