No. 33,017

THE STATE OF KANSAS, ex rel. CLARENCE V. BECK, Attorney General, and SIDNEY L. FOULSTON, County Attorney of Sedgwick County, *Appellant*, v. O. S. BASHAM, doing business as THE PUBLIC FINANCE COMPANY, *Appellee.*

(70 P. 2d 24)

Opinion filed July 10, 1937.

*Clarence V. Beck,* attorney general, *C. Glenn Morris,* assistant attorney general, *Forrest D. Smythe,* special assistant attorney general, *Sidney L. Foulston,* county attorney, and *William C. Hook,* deputy county attorney, for the appellant.

*K. W. Pringle, Henry Lampl, Maurice Lampl, Arnold C. Todd* and *J. B. Patterson,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action to enjoin defendant from conducting a business in flagrant violation of our statutes (G. S. 1935, 41-101 *et seq.*) relating to interest rates, and for the appointment of a receiver to close his business. The trial court made findings of fact, a conclusion of law, and rendered judgment for defendant. Plaintiff has appealed.

In the petition it was alleged, with much detail, that defendant was conducting what is commonly known as a "loan shark business," of loaning to salaried people small sums at highly usurious rates of interest, in gross violation of our statutes; that his method of conducting the business was oppressive to borrowers and contrary to the public policy of the state. A hearing was had upon an application for a temporary injunction, which, by stipulation, was expanded into a hearing on the merits, defendant having filed an answer consisting of a general denial. The trial court found defendant is in the business of making short-time loans in small amounts and has a number of clients—employed people, who borrow because of some emergency, such as sickness or death, or to purchase some convenience or luxury, or to enter into business; that defendant admits an unlawful or usurious rate of interest is charged—for example, on a $50 loan $75 is paid in installments within five months; that no co-signers are required and no security taken other than the note; that of the witnesses called none expressed dissatisfaction with defendant's method of making loans, or with the fact they were paying illegal interest; that most of them knew they were paying an illegal rate of interest, but did not refuse to pay for that reason, although a few took bankruptcy; that only one suit was shown to have been brought against a debtor, and that was dismissed before judgment; that no garnishment proceedings were shown to have been brought, nor threats shown to have been made which might cause the borrower to be discharged; that the borrowers have not been harassed, but the usual method of calling upon them and requesting payment has been followed. As a conclusion of law the court found plaintiff had failed to establish facts sufficient to warrant injunction and receivership.

Our statutes (G. S. 1935, 41-101 *et seq.*) prescribe lawful interest rates. Similar statutes have existed throughout our history. (Laws 1855, ch. 88; Laws 1860, ch. 75; Laws 1863, ch. 33; G. S. 1868, ch.

51; Laws 1871, ch. 95; Laws 1872, ch. 134; Laws 1889, ch. 164.) The earliest of these statutes permitted any interest rate by contract. (*Dudley v. Reynolds*, 1 Kan. 285.) Later ones limited the rate of interest which might lawfully be charged or agreed upon. The title to the last of these statutes (Laws 1889, ch. 164) reads in part:

"An act regulating the rate of interest upon money, prohibiting usury, and providing penalties therefor. . . ."

It is unlawful to charge or to contract for a rate of interest in excess of that provided by statute (*State, ex rel., v. McMahon*, 128 Kan. 772, 280 Pac. 906), and the state, by its attorney general, in a proper case, may enjoin violations of the statute. Indeed, under some circumstances an individual may do so. (*Waite v. Ballou*, 19 Kan. 601.)

It has become the public policy of this state to limit interest rates. This is deemed prudent and necessary to prevent grasping persons from taking undue advantage of those in need of money, many times to their financial ruin and to the detriment of our people as a whole. It is not contended on behalf of appellee that our present statute on this subject is invalid; neither is it contended that the state by legislation throughout its history has not adopted a public policy with respect to interest rates, nor that this public policy is not one designed to be beneficial to our people. The fact this has been done, and the prudence or authority of our statutes, are not attacked, and in effect are conceded.

The evidence clearly shows, and the court found, that defendant is in the business of violating these statutes. He testified that the Public Finance Company is a partnership owned by three persons— one at Atlanta, Ga., one at Tulsa, Okla., and himself; that he manages the Wichita office; that the business consists in making small loans, payable in short-time installments, to salaried people at interest rates in excess of 150 percent per annum, and that he now has more than 250 such loans in Wichita.

On his behalf it is conceded, in effect, that defendant is conducting a business in flagrant violation of our valid statutes and in violation of the long-time, well-settled public policy of this state, but appellee contends that nothing can be done about it for two reasons: (1) Because the statute does not make the charge of usury a crime and fix a penalty therefor. This point was considered in *State, ex rel., v. McMahon*, supra, and held not to be a bar to an action for injunction by the state. Indeed, the fact a criminal action cannot be

maintained makes injunction all the more appropriate, since the state does not have that remedy for the enforcement of the statute. (2) It is contended that defendant has not conducted his business in such an offensive manner as to amount to a nuisance, as was the case alleged in *State, ex rel., v. McMahon.* This argument appears to be predicated upon the view that statutes of this state designed for the public good and evidencing long-continued public policy may be openly and notoriously violated with impunity so long as the violator is pleasant or gracious in his manner of violating the statute. We pass for the moment this subtle thought and examine the record on this point. The document which defendant requires the borrower to sign in addition to an application for the loan of money consists of an instrument which may be spoken of as a note, dated, with the amount borrowed in figures in the upper left-hand corner, the due date blank, a promise to pay to the order of the Public Finance Company blank dollars in gold coin of the United States at the present standard of weight and fineness. It contains a specific waiver of the benefit of the laws of the state exempting real and personal property from levy and sale and choses in action from garnishment, and an agreement to pay a reasonable attorney's fee if the note after maturity is placed in the hands of an attorney for collection. It contains a representation of the amount of the borrower's indebtedness and a statement "that it is upon the faith and credit of such representation" the loan is made, and by it the borrower assigns his salary to the payee for the time he is to make payments and makes the payee his agent or attorney in fact to collect the salary, and further expressly releases and discharges the payee "from all class or causes of action for usury or any other action" by reason of the loan, and makes this binding on his heirs, personal representatives and assigns. The evidence disclosed that payments were to be made by the borrower weekly or bimonthly, and if a payment was delinquent the borrower's attention was called to it and he was asked to pay, sometimes by letter, perhaps more frequently by personal interview. In some of the letters the debtors were threatened with garnishment. The evidence disclosed only two instances of garnishment, and possibly the circumstances in those cases would have justified garnishment proceedings if the loans had not been usurious. In the personal interviews it was disclosed that veiled threats of an indefinite nature were made and defendant told the debtor that he would have to apply "pressure."

These loans were made only to salaried people who had steady employment with business or industrial concerns. One who can hold such a position, especially in recent years, normally has sufficient character and integrity to desire to carry out any promise he had made. Such a person who had signed documents waiving and releasing all the rights which our law throws about him respecting financial matters, and against whom the threat to use pressure is made, is naturally forced into something of a dilemma, one which may be as effective upon him and as disastrous as though the effort to force him to pay had been proceeded with in a ruder manner. Hence, the distinction which the defendant seeks to draw, and which apparently the trial court drew, between the facts in this case and those alleged in *State, ex rel., v. McMahon,* supra, is insufficient to justify a different result.

Much is said in the briefs of appellee about the conduct of defendant not amounting to a nuisance. That term has been many times defined, perhaps sometimes with too much refinement. We are not convinced defendant's conduct has to be characterized as a nuisance before it can be enjoined, but if so, there is authority so denominating it. In *State, ex rel., v. Crawford,* 28 Kan. 726, 733, it was said: "The repeated, continuous and persistent violations of the statutes are what makes them nuisances." This the defendant, by his own testimony, establishes that he has done and is doing. In *State v. Rabinowitz,* 85 Kan. 841, 118 Pac. 1040, it was said:

"At the common law, acts done in violation of the law, or which are against good morals or public decency, and which result in injury to the public, constitute a public nuisance." (p. 847.)

The rule stated in these cases just cited was not followed in *State, ex rel., v. Barron,* 136 Kan. 324, 15 P. 2d 456, and *State, ex rel., v. Iola Theater Corp.,* 136 Kan. 411, 15 P. 2d 459, for the reason that what was sought to be enjoined in those cases is a criminal offense under our statute. Even then there was a strong dissenting opinion by Chief Justice Johnston, 136 Kan. 414. But here that reason cannot be given, hence the cases are not controlling here.

It is fundamental that courts are open to the state for an action either in its sovereign capacity or as a corporate entity. (59 C. J. 299.) The sovereignty of a state embraces the power to execute its law. The state, on the relation of the attorney general, may maintain an action to enjoin the flagrant violation of its law. (See *State, ex rel., v. McMahon,* supra.) That has been done in some instances

where the violation of the law was made a criminal offense; but as to injunction in such instances there is a wide difference of views as to when injunction should be allowed. (See cases collected in the annotation, 40 A. L. R. 1145.)

The rule quoted from *State v. Crawford,* supra, has been recognized in the following cases and specifically applied in some of them:

In *State v. The Ohio Oil Company,* 150 Ind. 21, 49 N. E. 809, to enjoin the escape of natural gas in violation of statute.

In *People v. Truckee Lumber Co.,* 116 Cal. 397, 48 Pac. 374, to enjoin a lumber company from discharging sawdust into the Truckee river.

In *Wilentz v. Crown Laundry Service, Inc.,* 116 N. J. E. 40, 172 Atl. 331, to enjoin violations of statutes and regulations concerning prices for laundry.

In *State v. Holmes,* 133 Wash. 543, 234 Pac. 275, to enjoin a clerk of the court from filing papers presented by attorneys who had not paid the registration fee required by statute and rules for an integrated bar.

In *The People v. Tool,* 35 Colo. 225, 86 Pac. 224, to enjoin a conspiracy to prevent an election by fraud.

In *Kentucky State Board of Dental Examiners v. Payne,* 213 Ky. 382, 281 S. W. 188, to enjoin the practice of dentistry without a permit.

In *State, ex rel., v. McMahon,* supra, to enjoin the business of loaning money at unlawful, usurious rates.

In *State v. Martin,* 77 N. J. L. 652, 73 Atl. 548, and in *Commonwealth v. Donoghue,* 250 Ky. 343, 63 S. W. 2d 3, it has been held that an indictment stated a public offense which charged the common-law offense of conspiracy by engaging in the business of loaning money in small amounts at excessive, exorbitant and usurious rates. But this remedy is not available to the state here, for we have no common-law offenses; all crimes are statutory (*State v. Koontz,* 124 Kan. 216, 257 Pac. 944) ; and we have no statute making conspiracy to violate our laws a crime.

There is no reason defendant should be permitted openly, notoriously and flagrantly to violate our valid laws enacted for the benefit of our people. The state would be weak indeed if it were powerless to prevent it. Criminal prosecution is not available. Injunction is the only remedy. That remedy can be and should be enforced. The

result is the judgment of the court below must be reversed with directions to grant the injunction and to appoint a receiver for defendant's business. It is so ordered.

Hutchison, J., dissenting.