## CURTIS v. McKAIN.
### No. 5172.

Court of Civil Appeals of Texas. Texarkana.

May 7, 1936.

Lee, Porter & Latham, of Longview, for appellant.

Mayfield & Grisham, of Tyler, for appellee.

HALL, Justice.

This suit was instituted in the district court of Smith county by appellee against appellant for one-fourth interest in the Alamo Refining Company, and in the alternative for debt, to foreclose an equitable lien on said refining company's properties, and for appointment of a receiver.

. Appellee alleged in substance and effect that on or about May 28, 1935, he and appellant entered into a partnership agreement to lease and operate the Alamo Refining Company located in Gregg county, Tex., until October 10, 1935. According to appellee's verified petition, appellant represented to him that he (appellant) was trustee for the owners of said refinery who resided in the state of California, and that he could lease same for the sum of $3,000 per month; that he had a contract with the president of the Sun Pipe Line Company for crude oil at a price of $1.05 per barrel with which to operate said refinery, said crude oil to be furnished in 50,000 barrel lots; that he could purchase millions of barrels of crude oil from Sun Pipe Line Company as long as same was needed to operate the refinery; that he had made arrangements with one B. A. Skipper to finance the purchase of said crude oil; and that he had contracted with one John Stevens of Kilgore, Tex., a broker, to purchase the entire output of said refinery. All these representations, it was alleged, were false, and known to be false, when made to appellee by appellant. Relying on said false statements of appellant, appellee did on or about May 28, 1935, advance to appellant the sum of $3,000 with which to pay the first month's rent on said refinery. Later appellee advanced other amounts of money for purchase of crude oil, payment of labor, etc., so that his total outlay in the refining partnership was the sum of $11,685.81. Appellee alleged, further, that in truth and in fact the Alamo Refining Company had been purchased by appellant from certain parties, not of California, and that the money fraudulently procured from him with which to lease the refinery was used by appellant to pay a part of the purchase price of same, and that $10,000 of the money furnished by appellee to carry out their partnership venture was used by appellant to make payments on the purchase price of the Alamo Refining Company. Appellee alleges, further, that, after 10,500 barrels of crude oil had been purchased from Sun Pipe Line Company, it refused to sell any further oil to appellant. The petition of appellee states, further, that appellant insisted that appellee's connection with respect to the partnership operation of said refinery be kept secret, stating that, if such fact should become known, the owners of said refinery would cancel the lease; the Sun Pipe Company would refuse to sell them crude oil; B. A. Skipper would refuse to finance the crude oil purchases; and Stevens would refuse to buy the output of the refinery; that these business connections were made through the close personal friendship of these parties to appellant. The petition alleges, further, that appellant agreed to report daily to appellee the funds accruing to said partnership and all dis-

bursements; that he has demanded of appellant an accounting and settlement, but he has wholly failed and refused to make settlement or render him an accounting. The concluding paragraphs of said petition are:

"Plaintiff says that in truth and in fact, the said J. M. Curtis, individually owned the Alamo Refinery property on May 28, 1935, when this plaintiff entered into the partnership agreement with the said Curtis, as hereinbefore alleged, and that no part of the $11,685.81 advanced by this plaintiff to the defendant was used in the payment of rents, but that at least $10,000 of said money so advanced by this plaintiff was used by the defendant in making payments on the original purchase price of said refinery, and that this plaintiff is the rightful owner of an undivided one-fourth interest in and to said property which property is now in the name of J. M. Curtis or J. M. Curtis, Trustee, or in the name of some person designated by the said defendant, J. M. Curtis, in an effort to place the same beyond the reach of this plaintiff and that if the record title to said property is not in the name of the defendant, J. M. Curtis, it has been so transferred and/or the title has been so taken at the instance of the said J. M. Curtis, solely for the purpose of cheating, swindling and defrauding this plaintiff.

"In this connection, this plaintiff says that said property is being mismanaged in that it is not being regularly operated and being permitted to rust and depreciate in value and when operated is operated in violation of the laws of the United States of America, of the State of Texas, and of the rules and regulations of the Railroad Commission, and is being subjected to suits and penalties by the State of Texas, and that the defendant is notoriously insolvent and this plaintiff has no adequate remedy at law and unless said property is placed in the hands of a Receiver, pending this litigation so that the title to the interest owned by this plaintiff may be judicially determined and fixed and said property partitioned in kind or sold and the proceeds equitably and legally distributed, that this plaintiff will lose his interest in said property.

"Wherefore, premises considered, plaintiff prays that defendant be cited to appear and answer herein and that upon final trial he have judgment for one-fourth undivided interest in said property, or in the alternative that he have judgment against the defendant in the sum of $11,685.81 and a foreclosure of his equitable lien upon said property, together with the necessary provisions for sale thereon, and that pending this litigation, a Receiver be appointed to take possession, control and management of said property and to administer the same under the Orders of this Court, and for such other and further relief as to the Court may appear meet and proper."

The above is a summary of the allegations of appellee's petition. The instrument is too voluminous to set out in detail.

Based upon appellee's verified petition, the trial court granted appellee's application for receivership and appointed one M. L. Wihthrup receiver. From this order appellant prosecutes his appeal to this court.

It seems to be the contention of appellant that, since the partnership agreement contemplated the leasing and operation of a refinery owned by other persons, the identity of these persons could be no concern of appellee. In other words, it would not be fraudulent for appellant to lease the refinery from persons other than the California parties so long as he actually leased the refinery for the partnership. Hence the ex parte appointment of a receiver by the trial court was unauthorized. With this contention we might be able to agree if the allegations in appellee's petition charged nothing more. Appellee's petition sets out with particularity numerous allegations of fraud which induced him to enter into the partnership for the purpose of leasing and operating the refinery, and all these allegations in this discussion must be taken as true. Bingham v. Graham (Tex. Civ.App.) 220 S.W. 105. And, when this is done, we must assume, first, that appellant falsely represented to appellee that he (appellant) was the trustee for certain California owners of the Alamo Refining Company and that he could lease said refinery for $3,000 per month; second, we must assume that appellant falsely represented to appellee that he (appellant) could purchase for a certain price millions of barrels of crude oil from the Sun Pipe Line Company, in lots of 50,000 barrels, with which to operate said refinery; third, we must assume that appellant falsely represented to appellee that he (appellant) had made arrangements with B. A. Skipper to finance the crude oil purchases with which to operate said refinery; and, fourth, we must assume that appellant falsely represented to appellee that he (appellant) had made arrangements with one Stevens at Kilgore to purchase the output from said refinery. All these false representations we must assume

were made to induce appellee to agree to enter into the partnership venture and put up $3,000, not for the lease of the refinery as represented, but actually for the purchase of the same for the benefit of appellant. Under this partnership agreement the funds turned over to appellant by appellee for the benefit of the joint venture became partnership funds, and we quite agree with the statement in appellant's brief wherein he says: "The misappropriation by one partner to his own use of the funds of the firm is constructive if not actual fraud upon the trust fund, and the other partner may follow such trust funds into the property in which they have been invested; and the money may be recovered out of the proceeds of the sale of such property."

Concisely stated, appellee's petition alleges that he was induced, by the false representations of appellant, to enter into the partnership, invest his money in the partnership, and that appellant used said funds with which to purchase a refinery for his own benefit. This he could not do without accounting to appellee, his partner, for his (appellee's) interest in said refinery. We think this case comes clearly within subdivision 1, article 2293, R.S., and the trial court was fully warranted in appointing a receiver to take over the property in controversy. Bingham v. Graham, supra; Temple State Bank v. Mansfield (Tex.Civ. App.) 215 S.W. 154, and cases there cited.

The judgment of the trial court is affirmed.