**NORTH AMERICAN ACC. INS. CO. v. WYATT.**

No. 14337.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 27, 1942.

Rehearing Denied April 3, 1942.

King, Dawson & Jones, of Wichita Falls, for appellant.

McDaniel & Luecke, of Wichita Falls, for appellee.

SPEER, Justice.

Mrs. Maud Wyatt, the plaintiff below, is the beneficiary in a life and accident insurance policy issued by the North American Accident Insurance Company, Chicago, Illinois, to Stilwell A. Wyatt, who was subsequently killed in an automobile accident.

Suit was instituted by plaintiff against the insurance company, in Wichita County. Trial was to a jury, resulting in a verdict and judgment for plaintiff; hence this appeal by the defendant. The parties will be designated here as they were in the trial court.

The whole policy, with all its terms, conditions and exceptions, was pleaded by the plaintiff. The policy provides for coverage if an injury is sustained, (a) "By the wrecking of a private automobile of the exclusive pleasure type, * * * in which the Insured is riding or driving, *provided that the Insured is not operating such automobile while carrying passengers for hire or transporting merchandise for business purpose.*" (Emphasis ours.)

The petition alleges a state of facts necessary in all particulars to show liability, and negatives the exceptions contained in the provision last above quoted.

The defendant relied upon an answer containing general demurrer and general denial.

By numerous propositions, defendant contends that the judgment should be reversed, because: (1) An instructed verdict in its favor should have been given, (2) having declined to instruct a verdict the court should have sustained its motion for judgment non obstante veredicto, (3) error for the court to permit a witness to testify as to a statement made by deceased relating to the nature and manner that he and those who later traveled with him, were to make a trip to California in his car, and (4) error to fail to define certain expressions found in the several special issues. These points are all preserved throughout the record and are properly presented for review.

In such cases as this, under the law applicable at the time it was tried, it was necessary for the beneficiary to allege and prove that the loss was not occasioned by anything coming within the exceptions to liability, set out in the policy. International Travelers' Association v. Marshall, 131 Tex. 258, 114 S.W.2d 851.

The controlling point in this case is whether or not the testimony was sufficient to support the jury verdict, which was favorable, in all respects, to plaintiff.

The record reveals that a sister of Stilwell A. Wyatt, the insured, operated the Studio Hotel in Wichita Falls, and in connection therewith ran what is termed a "Travel Bureau". The nature and functions of the bureau constituted a type of agency whereby it would ascertain the names and addresses of persons desiring to travel to other points, and those who expected to drive their own automobiles going in that direction, and to get the parties together and let them make their own trade as to transportation, whether it be for a stipulated sum or to share the expense. The bureau was not interested in the kind of trade made between the parties. When an agreement was reached the bureau collected a small fee for the services thus rendered. The bureau operated no cars of its own and transported no passengers.

The insured had no fixed place of residence but occasionally returned to Wichita Falls and stayed at short intervals; while there, and especially on the occasion in question, he worked for his sister at the hotel, chiefly as desk clerk. His sister testified that he had no connection with the travel bureau operated by her. For some weeks a Mrs. Price, an acquaintance of deceased and his sister, had desired to make a trip to California but would only go with others on a "share the expense" basis; she expressed her desire to the "bureau", and asked that if such an arrangement could be made to let her know.

It also appears that at intervals during the month prior to the death of the insured, advertisements were run in a local daily paper, all reading slightly different but some were worded as follows: "Drive to California, Travel Bureau, let us arrange your trip—S. A. Wyatt." "Drive to California,

take share expense passengers, $8.50—S. A. Wyatt." "Driving to California—share and share expense, $8.50—S. A. Wyatt." Again, "Driving to California, want share expense guest, $7.50—Studio Hotel Travel Bureau." Other advertisements mentioned other places than California and were signed "Studio Hotel Travel Bureau." In response to these advertisements three ladies other than Mrs. Price, residing in the City, advised the bureau that they too desired to make such a trip under the conditions named.

Mrs. Price was the only one of the ladies making the trip when the insured met his death, who testified in the case. The others could not be located. She said that they had frequently talked about going to California, and that she got in touch with deceased at the hotel; she said her husband knew him very well; she said that she and the other ladies had talked about using her car but because of the condition of the tires, the idea was abandoned; that they then sought an opportunity to go with some one else on a basis of each sharing equally in the expenses so as to make it much cheaper; the four ladies met at the hotel to ascertain if the bureau had contacted any person who would take them upon a share the expense basis, and found that no such arrangement had been made. In this connection, Mrs. Price testified to a statement made at the time by the insured, to which defendant objected because it was hearsay and self-serving, and reserved its exception to the action of the court in overruling the objection. She said, "When he (insured) came back around there (the hotel) about five o'clock, we were still undecided, no other cars had come and he said he would take us in his car, but that it was not a travel bureau car and he wanted us to understand that; that it was a pleasure trip and all of us would be going for the pleasure of it, and we would all just go and have a nice trip, and we could share the expenses; he just made it plain that he was not running a travel bureau, but he was to keep track of the expenses and then we were to pay. At least that is the agreement that I made with him." The witness said, on cross-examination, relating to her arrangements with deceased about the trip, that "we were to share expenses, each one was to bear his proportionate part of the expenses of the trip." Having elicited that testimony, defendant made no objection to it.

In response to special issues, the jury verdict was in substance that, (1) at the time of the accident which resulted in the death of the insured he was operating a car of the exclusive pleasure type; (2) that it was lawfully registered and licensed; (3) he was not operating a car while carrying passengers for hire; (4, 4a, 4b, 4c and 4d) the five ladies riding with insured when the accident happened were each bearing only her proportionate share of the expenses of the trip; (5) no other consideration was to be paid to the insured by either of the women riding in the car as compensation for their transportation; (6) the parties were all making the trip for their mutual pleasure and benefit; and (6) insured, at the time of his death, was not transporting merchandise for business purposes.

It is contended that the testimony of Mrs. Price, above referred to, wherein she related what the insured had said prior to starting on the fatal trip, was inadmissible, and in its absence there was no evidence to support the verdict and therefore an instructed verdict should have been given.

Bearing in mind the generally well settled rule of evidence relating to hearsay, we must also remember that there are exceptions to that rule as well settled as the rule itself. The exceptions are somewhat similar in their nature to those pertaining to the best evidence rule. If a fact is to be established, it must be proven by the best evidence available. As an example, the rule of res gestae may be cited. In the latter class of cases it has been held that the rule is very latitudinous and its application should be determined to a great extent by the discretion of the trial court. There is no hard and fast rule from which its admissibility may be determined; to be admissible in evidence it must reasonably appear that such statements were a part of the transaction between the parties and so nearly coincident with it that the taint of fraud and fabrication will be excluded. Worley v. International Travelers' Assurance Co., Tex. Civ.App., 110 S.W.2d 1202, writ dismissed, and authorities there cited. It is argued by defendant that the declarations of the insured were self-serving in that he obviously made the statement to the effect that the trip was to be one of mutual benefit and pleasure and upon conditions that each should pay his own proportionate part of

the expense, to avoid the exception in his policy against carrying passengers for hire or to evade a criminal statute against engaging in the business of transporting passengers for hire without obtaining a license therefor. We do not think that such a conclusion necessarily follows from what was said. If a presumption must be indulged it should be that a person does not intend to violate a law, nor to breach his contract, the contract of insurance in this case.

■ We think the declarations of the insured about which Mrs. Price testified were admissible, independent of the theory of res gestae above discussed. In this case we are endeavoring to determine whether these parties made the trip in question for their mutual benefit and pleasure, or did the insured undertake to transport those ladies to their destination under such conditions that would constitute transporting passengers for hire. From the testimony quoted it is shown that he definitely stated the purpose and made it plain that it was to be a social trip among them all and that the expense would be a proportionate part to each, the amount to be determined when the journey was completed. The issue is, what were their intentions in this respect? The declarations made by the insured immediately prior to the consummation of the deal constitute the best evidence of the state of his mind about it; the statement was made in the presence of four of those who were to go, and Mrs. Price says that is the way she understood the arrangement. When such statements are made at a time when no motive exists for fabrication, they are as reliable as any other facts and circumstances usually relied upon in a law suit to establish a fact. The insured was dead when the case was tried, and we think his declarations made just prior to their departure as to destination, the manner in which the expense of the trip would be borne and the purpose of the journey are admissible when testified to by one who heard those expressions. Prater v. Traders & General Ins. Co., Tex. Civ.App., 83 S.W.2d 1038, and cases there cited; Southland Life Ins. Co. v. Greenwade, Tex.Civ.App., 143 S.W.2d 648, affirmed by the Supreme Court in 159 S.W.2d 854, not yet published [in State Reports]; Wigmore on Evidence, Vol. 3, § 1725.

The facts reveal that after the parties had perfected their arrangements for the journey, they started from Wichita Falls at about 9 o'clock P. M. and drove to Amarillo, where sometime after midnight they picked up another passenger and continued to drive, without stopping for rest, until they were at a point near Flagstaff, Arizona, where the fatal wreck occurred. It is argued by defendant that if it be conceded that the trade between the insured and the four ladies from Wichita Falls was as testified to by Mrs. Price, there is no testimony of any character as to what arrangements were made with the passenger from Amarillo, and therefore plaintiff did not discharge the burden of showing that the insured was not transporting the Amarillo woman for hire. If such concession be made, and we think it must, viz: that the four Wichita Falls women were traveling under an agreement to share the expense equally, for their mutual benefit and pleasure, then, absent some evidence that another arrangement was made with the Amarillo passenger, the original agreement as shown presents strong circumstances that the same arrangements were made with the Amarillo woman. This is true because of the shortness of the time since the making of the first deal, the absence of anything to show a change in insured's mind and, as we view the situation, it would have been impracticable for him to carry out his trade with the first group and take on another passenger upon a different basis.

■ For the reasons stated, we have concluded that there was sufficient evidence of a substantial nature to require the submission of the issues to the jury. It naturally follows, of course, that no error is presented by a refusal of the court to instruct a verdict and to sustain the motion for judgment non obstante veredicto.

This brings us to a consideration of the question, was insured transporting passengers for hire, at the time he met his death? If he was, then plaintiff cannot recover for the simple reason, the policy provides that no coverage was given to deceased, in such circumstances. Upon the other hand, if he was not so transporting passengers for hire at the time, clearly plaintiff should recover in this case.

We have seen no case by a court of this state, in which the precise point before us has been decided. Both in this state and in other jurisdictions, courts have had before them cases involving what is commonly known as the "Guest Statute". Others have discussed the legal status of per-

sons riding together in automobiles while engaged in joint enterprises. In its broadest sense any person riding with another in his car (or one controlled by him) may be said to be a "passenger". Certainly one so riding in the capacity of a guest would not be a passenger for hire. Nor is the distinction of liability of the host or other operator of the automobile, to an injured guest passenger, and his liability for damages to a passenger for hire, an essential issue in this case. In view of this, we find little to enlighten us in the cases cited and commented upon in the briefs filed. The analogies drawn by counsel on both sides are persuasive and helpful.

Raub v. Rowe, Tex.Civ.App., 119 S.W.2d 190, writ of error refused, more nearly decides the question than any others cited. Both sides have given their views of a proper interpretation of what is there held. In that case plaintiff sued for damages sustained, alleged to have been caused by the negligence of the defendant The petition revealed that the two parties were making a trip for mutual pleasure and benefit; and that plaintiff was riding with the defendant under an agreement to pay a portion of the car expenses on the trip. There were no allegations in the petition which would render defendant liable, if plaintiff was her "guest". The trial court sustained a general demurrer to the petition, plaintiff declined to amend and the suit was dismissed. In reviewing the case the court gave what we believe to be an able discussion of the various points involved. At page 192 of 119 S.W.2d this is said: "Undoubtedly the plaintiff was such a guest [under the statute] unless it can be said the agreement on her part to pay the defendant the plaintiff's proportionate part of the cost of gas and oil for the operation of the car is to be regarded as constituting payment for plaintiff's transportation. The question has arisen in other states under statutes similar to our own statute, and it is quite generally held that an agreement on the part of the plaintiff to pay plaintiff's share of the operating expenses of an automobile in which the plaintiff is riding does not make the plaintiff a passenger for hire or compensation." Many cases are cited from other jurisdictions in support of the holding.

 In this case we have jury findings of fact from competent testimony, that each of the ladies riding with insured was bearing only her proportionate part of the expense in making the trip, and that neither was to pay anything but such proportionate part of the expense in compensation to the insured, and that all were making the trip for their mutual benefit and pleasure. We conclude as did the court in Raub v. Rowe, supra, that the insured was not "transporting passengers for hire", in violation of the exception of liability contained in the contract of insurance.

 Other points presented raise the refusal of the trial court to define such expressions in the charge as "lawfully registered and licensed", "passengers for hire" and "mutual pleasure and benefit". We do not think that the quoted expressions are either legal terms, nor do they have such technical meaning as the jury needed explanations to enable them properly to understand and answer the questions. The recognized rule in such matters appears to be, reasonable necessity, considering the term or terms used. Robertson & Mueller v. Holden, Tex.Com.App., 1 S.W.2d 570.

We have carefully considered each and every point raised by defendant and have reached the conclusion that no error is shown, and all are overruled. The judgment of the trial court will be affirmed. It is so ordered.