**WILKENFELD et al. v. STATE et al.**
No. 11700.

Court of Civil Appeals of Texas.   Galveston.
June 21, 1945.

Ladin, Lieberman & Boarnet, William E. Ladin, Seymour Lieberman, and Irvin H. Boarnet, all of Houston, for appellants.

Grover Sellers, Atty. Gen., and Ocie Speer, Harris Toler, Jack Rowland and Robert O. Koch, Asst. Attys. Gen., and A. C. Winborn, Dist. Atty. and Robert R. Casey, Asst. Dist. Atty., both of Houston, for appellees.

MONTIETH, Chief Justice, and CODY, Justice.

This is an appeal from that part of an interlocutory order of the 61st District Court of Harris County, made without notice and upon an ex parte hearing, appointing a receiver to take over the business assets of appellants, defendants in an action brought by the State of Texas through Grover Sellers, Attorney General, and others under Article 4646b, Vernon's Revised Annotated Civil Statutes, for an injunction restraining defendants from charging and collecting usurious interest and for a receivership. The interlocutory order of the court from which this appeal is taken granted the temporary restraining order applied for and also appointed a receiver to take possession of the business assets of defendants. In this appeal no complaint is made of that part of the court's order granting the restraining order or temporary injunction.

The State of Texas in its original petition, a copy of the pertinent parts of which is attached to and made a part of this opinion, alleged that the defendants and each of them resided in Harris County, Texas, and were engaged in the business of habitually lending money upon contracts for the use and detention of which usurious interest had been charged and contracted to be paid by the borrowers; that the business of lending money as it was carried on by the defendants was in violation of constitutional and statutory law and that it constituted a nuisance. It alleged that to permit the defendants to retain the possession of the contracts, notes, agreements and instruments used by the defendants in the conduct of their business would put it in the power of the defendants to continue such unlawful business to the great hurt of the public at large, and that the enforcement of Senate Bill 43, now Article 4646b, authorizing a permanent injunction restraining the unlawful lending of money, would be accomplished more fully and effectively by the appointment of a receiver by the court to take charge of appellants' business assets, with such powers as are reasonably necessary to aid in the enforcement of the court's injunction, in that the defendants might, and the State believed and charged that they would, seek to evade contempt proceedings by transferring, usually pretended only, their business, notes, and accounts to some other real or assumed name or individual and continue such business despite the existence of an injunction against the transfer userer and that the appointment of said receiver was an essential and helpful aid as an incident to the remedy of permanent injunction.

The State's petition was verified by an Assistant Attorney General of the State of Texas. Upon presentation of the application to the district judge an order was made without notice to the defendants, which, in effect, restrained the defendants from carrying on their business and by which the defendants were restrained from transferring in any manner to any person or persons whomsoever, any of the vouchers, books, papers, notes, applications, cards or instruments of whatsoever kind used by the defendants in connection with their business of lending money. At the same time and as part of the order, and without any notice to defendants, a receiver was appointed charged with the duty of taking possession of all the property of the defendants, "such property being all books, papers, vouchers, notes, contracts, applications for loans, cards, statements, collateral or incidental contracts or stipulations or agreements used by the defendants in connection with their business of lending money."

Appellants in their brief make a two-fold attack upon the court's action. They contend (1) that, under the facts alleged, the trial court erred in rendering an interlocutory ex parte order appointing a receiver without notice over the business assets of each of these defendants; and (2) that said Article 4646b is unconstitutional under both the State and Federal Constitutions, and that the trial court erred in rendering its order appointing a receiver.

Since this cause was submitted in this court, the Austin Court of Civil Appeals of Texas, on April 19, 1945, in Walter Watts et al., Appellants, v. Gerald C. Mann et al., Appellees, 187 S.W.2d 917, has held said Article 4646b to be valid and enforceable, as against the same objec-

tions presented in that court to the measure as are urged against it by these appellants in this court.

This court not only considers itself bound by that decision, but concurs therein as being correct, and overrules defendants' points attacking the constitutionality of said Act.

Eliminating the question of the constitutionality of said Article 4646b, the controlling question presented in this appeal is whether, under the facts alleged in the State's petition, on which the court's order establishing the receivership was based, the trial Judge abused his official discretion in appointing a receiver to take possession of the business assets of appellants on an ex parte hearing without notice to appellants.

Said Article 4646b of the Vernon's Revised Annotated Civil Statutes of Texas, under which this suit was brought, became effective August 10, 1943. Omitting its formal and inapplicable parts, it reads:

"Section 1. The State of Texas through its Attorney General, or any District or County Attorney, may institute a suit in the District Court to enjoin any person, firm, or corporation or any officer, agent, servant or employee of such person, firm, or corporation who is engaged in the business of habitually loaning money for the use and detention of which usurious interest has been charged against or contracted to be paid by the borrower, from demanding, receiving or by the use of any means attempting to collect from the borrower usurious interest on account of any loan, or from thereafter charging any borrower usurious interest, or contracting for any usurious interest. All persons, firms, or corporations, and their agents, officers, servants and employees similarly engaged in making loans of money as herein defined, who reside in the same county, may be joined in a single suit and no plea of misjoinder of parties defendant shall ever be available to any defendant in such suit.

"Sec. 2. * * *

"By the term 'usurious interest' as used in this Act, is meant interest at a rate in excess of ten (10%) per centum per annum.

* * * * * *

"Sec. 3. In any such suit venue shall lie in the county of the residence of a defendant, or in a county where such business of loaning money is being conducted by such defendant."

It will be noted that said Article 4646b expressly provides that the State of Texas, acting through its duly authorized officers, may institute a suit to *enjoin* (emphasis ours) any person, firm or corporation who is engaged in the business of habitually loaning money for the use of which usurious interest is charged. Under this Act the State of Texas had an effective and speedy remedy which had been expressly provided for actions of this kind which was less drastic than a receivership and which would have permitted the appellants to retain possession of their property.

■ The right to the appointment of a receivership after notice and a hearing is a separate and distinct matter from the right to an appointment ex parte and without notice. The rules which apply in the two instances are separate and distinct. In the first instance the matter is controlled by Article 2293, R.S.1925, which details the cases and circumstances in which an appointment may be made upon a hearing after notice, while the latter, assuming that a cause of action is alleged, rests in the sound discretion of the court. Corsicana Hotel Co. v. Kell, Tex.Civ.App., 66 S.W. 2d 760.

■ The appointment of a receiver without notice to the adverse party is one of the most drastic remedies known to the courts and should be exercised only in extreme cases where the rights therefor are clearly shown, and then in the exercise of great caution by the court, Keep 'Em Eating Co. v. Hulings, Tex.Civ.App., 165 S. W.2d 211; 36 Tex.Jur. 108, and cases there cited, and cause therefor must be shown either in a verified bill, petition or complaint or by affidavit, as no other evidence is admissible and facts and circumstances, as distinguished from mere opinions and conclusions, must not only be set forth but they must be alleged and verified positively and not upon information and belief. Zanes et al. v. Lyons, Tex.Civ.App., 36 S.W.2d 544; C. P. Oil Co. v. Shelton, Tex.Civ. App., 48 S.W.2d 509; Corsicana Hotel Co. v. Kell, Tex.Civ.App., 66 S.W.2d 760; 53 Corpus Juris, 59.

The State in this case does not contend that the temporary injunction which it sought and obtained restraining defendants from "demanding, receiving or by the use of any means attempting to collect from

any borrower usurious interest on account of any loans" et cetera, and from "transforming in any manner to any other person or persons whomsoever any of the vouchers, books, papers, notes, applications", et cetera, if the court's order is obeyed by defendants, would not accomplish the same purpose as the ex parte appointment of a receiver. The ground and the sole ground urged by the State for the appointment, ex parte, of a receiver is that a temporary injunction is inadequate. The sole ground alleged for this inadequacy of the temporary injunction is that the defendants would treat the injunction with contempt by not obeying it.

■ It is undoubtedly the law that, when plaintiff has an interest in property which is in the possession of defendant and it is shown that said defendant is wasting said property and that he will treat an injunction ordering him to desist therefrom with contempt and will not obey it, an injunction is not adequate and the court should, in aid of the injunction, appoint a receiver to take over the property. Cash v. Ervin, Tex.Civ.App., 62 S.W.2d 242; Patton v. State, Tex.Civ.App., 62 S.W.2d 381. While the State has no pecuniary interest in the assets by which the defendants carry on their business, it has the right, pendente lite, to the injunction granted it under said Article 4646b. If the appellants should treat such injunction with contempt and transfer any of the vouchers, books, papers, etc., the court could, under above authorities, appoint, ex parte, a receiver in aid of the injunction. Appellants in such a case would have only themselves to blame for the seizure of their property.

An examination of plaintiff's petition discloses that the State sought a receiver "to take possession of the business affairs of each of said defendants herein in the matter of their loan business * * * used by said defendants in connection with their said business of loaning money, and to hold and keep the same in his possession subject to the order of this court from time to time until final disposition thereof had been made." It is apparent from this prayer that a temporary restraining order would have accomplished all that the State sought.

The State's suit is one for a permanent injunction. In its original petition it alleges, however, that the remedy by injunction was not as effective in forbidding the conduct of such business as it should be, in that the defendants might, and the

State charged that they would, seek to evade contempt proceedings for the violation of an injunction by transferring their business, notes, accounts, contracts, etc., to some other individual who would continue such unlawful business.

■ The rule is well established in this State that a receiver will not be appointed without notice if the status of the property can be maintained and the rights of the applicants protected by the issuance of a restraining order or a temporary injunction or any remedy less drastic than a receivership. City National Bank v. Pigg, Tex.Civ.App., 63 S.W.2d 327; Security Land Co. v. South Texas Development Co., Tex.Civ.App., 142 S.W. 1191; 36 Tex.Jur. 108.

■ Further, it will be presumed that the appellants herein would have obeyed the terms of the order of the trial court restraining them from transferring their books, papers or instruments of any kind used by them in connection with their business. This was the sole purpose for which the receivership was sought. First National Bank of Jacksonville v. First State Bank et al., Tex.Com.App., 291 S.W. 206; North American Acc. Ins. Co. v. Wyatt, Tex.Civ.App., 160 S.W.2d 298; Casualty Reciprocal Exchange v. Baloney, Tex.Civ.App., 167 S.W.2d 209.

■ The allegations relied upon by the State for the appointment of a receiver are merely the conclusions and opinions of the pleader. While the State alleged that it fears that the business assets of appellants will be transferred to some other individual and that the State had no access to such evidence and no practical means of examining appellants' business assets or knowing the actual contents thereof, no acts on the part of appellants are alleged which tended to sustain the general conclusions alleged.

These allegations are merely expressions of the petitioner's fear that appellants will place beyond its reach evidence that will tend to establish its case without revealing the facts upon which the fear is based. It has been uniformly held that relief of this type can be stayed and abated by the interposition of a temporary injunction but that such allegations are insufficient to justify the drastic remedy of a receivership granted upon an ex parte hearing and without notice to the defendants. Corsicana Hotel Co. v. Kell, Tex.Civ.App., 66 S.W.

2d 760; Molly Oil Co. v. Green, Tex.Civ. App., 72 S.W.2d 358.

"The right to a day in court and the privilege of being heard before judgment is a constitutional guaranty, the very essence of due process of law. Receivership should never be appointed, except in dire necessity." Johnson v. Williams, Tex.Civ.App., 109 S.W.2d 213, 214. If this dire necessity is brought on and occasioned by the contumacious conduct of the defendant, it is but just that his property be placed in the custody of the law to the end that the court's orders relative thereto will be obeyed. But where the ground for granting a receivership, ex parte, instead of an injunction, boils down to the claim that the defendant will not obey an injunction, the probability that such defendant will disobey an injunction must be made to appear by satisfactory allegations. To be satisfactory, we believe that allegations must be the legal equivalent of an allegation that the defendant has theretofore disobeyed an injunction. For it is to be borne in mind that the allegations must overcome the presumption that everyone will obey an order of the court.

It follows from above conclusions that the order of the trial court appointing a receiver must be reversed and the receivership set aside.

Order reversed and receivership set aside.

## EXHIBIT A.

"IV. The State of Texas would show that each and every person, each and every co-partnership, each and every person or persons operating under an assumed name, each and every corporation, or person or association of persons whatsoever named as a defendant, is engaged in the State of Texas in the business of habitually loaning money upon contracts, for the use and detention of which usurious interest has been charged and contracted to be paid by the borrower, and has been so engaged in such business at all times since the effective date of Senate Bill No. 43, Chapter 144, enacted at the Regular Session of the 48th Legislature of Texas, to-wit, since August 10, 1943, the effective date of said Act. That is to say, each and every one of said named defendants has made as many as three loans of money in Texas on which and in connection with which usurious interest was charged against and contracted

to be paid by the borrower, since the effective date of said Senate Bill No. 43, and prior to the filing of this petition, the rate of interest so charged and contracted to be paid being in excess of ten per centum per annum.

"That each and every one of said defendants not only is now engaged in such business in Texas, but that each and every one is threatening to continue such unlawful business, and will do so unless restrained by the appropriate orders of this court. In this connection the State of Texas would show that the said sums of money so charged against and contracted to be paid by the borrowers were for interest upon a loan or loans of money in violation of the Constitution and statutes of the State of Texas, as well as in violation of said Senate Bill No. 43, Chapter 144.

"The State of Texas furthermore would show that this suit is instituted and is being prosecuted in the sovereign right of the State of Texas, as provided by law, and not in anywise or to any extent in behalf of any individual in his private right as borrower to any cause of action whatsoever given to him by law as against the defendants, or any one of them.

"V. The plaintiff furthermore would show to the court that during all of such time each of said defendants has pursued a regular course, plan and system, and has adopted methods of various kinds, and schemes of divers sorts, calculated to conceal, and intended by them to conceal the real facts surrounding their said loan transactions from the public, and especially from the enforcement officers of the State as to such matters, and have resorted to all character of subterfuges and clever and questionable practices, thus to conceal and deceive their customers, borrowers, the public in general, and the plaintiff, State of Texas, and its lawful enforcement officers, in an effort to carry on their said unlawful business.

"In this connection, plaintiff, State of Texas, would show that it is not able specifically to enumerate the various and numerous methods, schemes, and subterfuges of defendants, but would show, as is of course true, that the same are well known to the defendants. Further in this connection the plaintiff would show that all notebooks, papers, records and instruments whatsoever, concerning their said unlawful transactions, respectively, are in the exclusive possession of said defendants, re-

spectively, and the State of Texas has no access to such evidence, and no practical means of examinating the same, or even of knowing of the actual existence or contents thereof, for which reason the plaintiff is not able to be more specific in its allegations herein.

"That the real intention of defendants, respectively, in the numerous loans made by them, and the real charges and demands made by them against their customer borrowers was compensation for the loan of money by the lenders at a rate of interest in excess of ten per centum per annum, in violation of said Senate Bill No. 43, and other constitutional and statutory provisions.

"VI. This plaintiff further would show, as to the court is well known, that the State of Texas was and is in no manner a party to any of the contracts of loans by said defendants, or any of them, and that whatever the form of expression of the contract or pretended contract as between the defendants and their respective borrowers may have been, the State of Texas (this plaintiff) is in nowise bound thereby, but is concerned only in the real intention of the defendants entering into such contracts as to the charging of interest upon such loans and the real facts surrounding each such transaction in such respect.

"VII. The plaintiff furthermore would show to the court that the business of loaning money, as is now being carried on by the defendants, each and all, respectively, is in violation of positive law, both constitutional and statutory, and constitutes a public nuisance, and the same can not be successfully prosecuted or carried on otherwise than by violating constantly the usury laws of the State. That the defendants, respectively, in the course of their said business, as the same has been carried on, is being carried on, and must be carried on in the future, if at all, have entered into numerous and divers contracts, agreements, and the like, in connection with their said loans, and evidencing in part, if not in whole, their said respective contracts with their borrowers, and that said notes, contracts, agreements, and the like instruments, are in the possession of the said defendants, respectively, and the same are being used and enforced by the defendants, respectively, in utter contempt for, and in violation of the said laws of Texas forbidding usury, and the same cannot be used otherwise lawfully by the defendants.

That to permit the defendants to retain possession of said contracts, notes, agreements, and instruments will put it within the power of said defendants to continue their said nefarious and unlawful business, to the great hurt of the public at large. That the purposes of the law, to-wit: Senate Bill No. 43, authorizing a permanent injunction against such unlawful lending of money, will be accomplished more fully and effectively by the aid of the appointment of a receiver by this court to take charge of any and all such notes, bonds, contracts, agreements, instruments, or papers whatsoever, now in the possession of said defendants, respectively, taken on account of or in connection with such loans made by defendants, respectively, with such powers as are proper and reasonably necessary to aid in the enforcement of the court's injunction, or other restraining orders herein, to the end that such orders may be effective to accomplish their lawful purpose or purposes.

"VIII. Plaintiff moreover would show that Senate Bill No. 43 makes the business of habitually loaning money at usury in this case a public nuisance—not in name but in legal effect—in this, that it shows such business to be a menace to the welfare of the State and to constitute an unconscionable imposition upon that part of the public patronizing such business when in need, financially, and authorizes the abatement of such nuisance as a public nuisance specifically, in that it authorizes the issuance of a permanent injunction forbidding the same. The defendants engaged in such business by reason of such law, therefore, are subject to be, and ought to be, put out of such business entirely, and such business ought to be, in the interest of the public, abated, and the management thereof, in whatsoever form or name, dissolved.

"In this connection, plaintiff would show that the remedy by injunction through the incidental punishment by contempt proceedings is not as effective in accomplishing the forbidding of such unlawful business as it should be, in this, that one of the subterfuges and schemes adopted by such small loan users in the concealment of such business in respect to the owner or management thereof so as to evade contempt proceedings by transferring, usually pretended only, such business, its notes, accounts, books, funds, and all like things used in connection therewith, to some other

real or assumed name or individuals and continue such unlawful business despite the existence of an injunction against the transferer userer. The plaintiff has reason to believe, and does believe, and so believing here alleges the fact to be, that the defendants who daily and persistently wilfully violate the Constitution and statutes of the State governing usury will not scruple or hesitate to adopt such schemes to avoid the penalty of injunctions and contempt proceedings.

"Furthermore, plaintiff would show that the remedy by permanent injunction authorized by Senate Bill 43, for the purpose of preventing usury under the mandate of Article XVI, Section 11, of the Constitution [Vernon's Ann.St.] cannot be efficiently effective, within the contemplation of the Constitution and statutes, without the aid of a receiver clothed with the necessary and proper authority and powers with respect to effectuating the purposes of the Constitution and statutes to wind up and permanently enjoin such unconscionable business as that being carried on by the defendants to the great public damage, and contrary to the mandates and the dignity of the State.

"In this connection this plaintiff would show that the appointment of such receiver is an essential and helpful aid as an incident to the legal remedy of permanent injunction specifically authorized by law, and the same may be granted, and should be granted in the exercise of the equitable powers of this court under the established principles and practices of equity."

GRAVES, Justice (dissenting).

This appeal is from only so much of an interlocutory order of the 61st District Court of Harris County (Hon. Ben F. Wilson, Judge presiding), as—on the application of the appellee, the State of Texas therefor—ex parte and without notice to the appellants, appointed a receiver for certain specifically-described property of the appellants, the material part of which was—in his verbis—as follows: "It is further ordered, adjudged, and decreed, that the plaintiff's prayer for the immediate appointment of a receiver is granted, and Ernest A. Knipp, of the County of Harris, is hereby appointed as such receiver, whose duty it shall be to take possession of all the property of the defendants, above named, wheresoever situated, specifically, such property being all books, papers, vouchers, notes, contracts, applications for loans, cards, statements, collateral or incidental contracts, or stipulations, or agreements, used by said defendants in connection with their business of loaning money; to have, hold, keep, the same in his possession, subject to the orders of this court from time to time, until final disposition thereof has been made, and to employ such help as is necessary therefor."

The quoted order so proceeded out of cause No. 313880, styled The State of Texas v. Pacific Company Loans, et al., then pending unheard on the merits in that district court, which was an action by the State, through its Attorney General and the district attorney of Harris County, acting in its governmental capacity only, against the appellants here as Loan Companies, or parties alleged to be engaged in the lending of money in Harris County, brought solely upon the authority of Article 4646b of Vernon's Texas Annotated Civil Statutes (known as Senate Bill 43, Acts of the Regular Session of the 48th Legislature), for a permanent injunction against them; the gist of its material averments was that they each and all were operating their business in violation of that invoked statute, in that they were "engaged in the business of habitually loaning money, for the use and detention of which usurious interest was being exacted of and collected from the borrowers thereof", hence were committing the specific wrongs against the sovereign State itself it had therein denounced.

Appellants complain here against the order, pursuant to R.S. Article 2250, and No. 385 Texas Rules of Civil Procedure, under which, after having first so limited their notice of appeal to that part of the trial court's decree "granting and appointing a receiver ex parte herein", they next, within five days thereafter, duly prosecuted their appeal directly to this court, as so limited and authorized.

So grounding it, appellants make an over-all two-fold attack upon the court's action, which their brief, in substantial substance, states this way: "Part I, assuming the constitutionality of Article 4646b, of the Revised Texas Civil Statutes, under which this suit was brought, which we do not, the Trial Court erred in rendering an interlocutory ex parte order appointing a receiver, without notice, over the business and business assets of each of these defendants; and Part II, that the aforesaid Arti-

cle 4646b, of the Vernon's Revised Texas Civil Statutes, quoted on Page 3 hereof, is unconstitutional under both the State and Federal Constitutions, and hence the Trial Court erred in rendering an interlocutory ex parte order appointing a receiver, without notice, over the business and business assets of each of these defendants."

Full concurrence is here entered in so much of this court's opinion herein as overrules appellants' attack upon the constitutionality of the statute involved, following a like holding by the Austin Court of Civil Appeals. Since this court also quotes the bulk of the Act otherwise, there is here added only these fuller recitations of Section 2 and 2a thereto, to-wit:

"Sec. 2. By the term 'habitually' as used in this Act, is meant the making of as many as three (3) loans on which or in connection with which usurious interest is charged or contracted for within a period of six (6) months next preceding the filing of any such suit.

"By the term 'usurious interest' as used in this Act, is meant interest at a rate in excess of ten (10%) per centum per annum.

"Sec. 2a. Nothing in this Act shall in any way modify, alter or change any valid provision of Article 8 of Chapter 5 of House Bill No. 79, Acts of the Regular Session, 48th Legislature, nor shall anything in this Act prevent charging of any actual and necessary expense, now or hereafter permitted and authorized by law, and such shall not be considered interest."

It results perforce from the recited state of the record that this court must—in conformity thereto—base its determination as to the authority of the trial court to issue the appealed from order, wholly upon the face of the Act itself, along with the allegations of fact made by the State in its petition against the appellant Loan Companies, which are to be taken as true; this for the reason that, the order having been made at the instance of the State ex parte and without notice to the appellants, they have brought up no showing of any counter measure or response on the facts of the controversy they may have made thereto below, if any at all. Myerscough v. Garrett, Tex.Civ.App., 45 S.W.2d 1003; Friedman Oil Corp. v. Brown, Tex.Civ.App., 50 S.W.2d 471; Cash v. Ervin, Tex.Civ.App., 62 S.W.2d 242; Curtis v. McKain, Tex. Civ.App., 94 S.W.2d 829.

In other words, appellants are not in the position of claiming on this appeal that they made sworn denials of any of the specific allegations the State presented under oath against them, and upon which the trial court saw fit to so act, ex parte and without notice to them.

Wherefore, in these circumstances, the only question of law presented here is that of whether or not the trial court abused a sound judicial discretion in entering such an order as being in consonance with its powers under the valid provisions of Article 4646b. Cash v. Ervin, Tex.Civ.App., 62 S.W.2d 242; Massey v. Greenwood, Tex. Civ.App., 56 S.W.2d 1103; Friedman Oil Corp. v. Brown, Tex.Civ.App., 50 S.W.2d 471; Baptist Missionary, etc., Convention v. Knox, Tex.Civ.App., 23 S.W.2d 781; 36 Tex.Jur. pp. 84 and 85.

Under these deductions, many of the collateral matters discussed in the briefs become immaterial, since, from the face of the thus narrowed proceedings before it, this court must measure the legal reaches of the trial court's power in construing and applying that enactment.

Appellants, whether consciously or not, appear to be influenced in all their objections to the trial court's action by an underlying conviction that the statute is inherently violative of their asserted constitutional right to have had their day in court before such an order could be properly entered, in any event; but, as indicated, that claim is considered to have already been authoritatively foreclosed against them.

So that, the statute being valid upon its face, the inquiry is reduced to whether or not the court's order contravened or denied any other right of theirs.

Holding that it did not, this dissent from the judgment here reversing that order and setting aside the receivership proceeds in part upon these further conclusions: (1) That the statute being valid, itself created for the first time in Texas a cause of action in the State, when acting in its sole capacity as a sovereign, for a permanent injunction against any violator of the provisions it denounced in its Section 1 against the habitual loaning of money in this state at usurious interest rates; (2) that the district courts of Texas were vested with the jurisdiction and power to entertain such a suit by it, and, pending the final trial thereof on its merits, were also, by both impli-

cation from the distinctive terms of this law and their inherent authority, left with the right to exercise over the proceeding all the equitable powers and privileges theretofore conferred upon and existing in them; (3) that, under the stated circumstances, and especially the detailed allegations by the State—which have been appended in Exhibit A to this court's opinion herein—as to such usurious practices now and prospectively by the appellants as the Act so denounced, it was not in excess of a lawful discretion for the court to so appoint a receiver ex parte and without notice to the appellants; (4) especially so, since the order did not, in terms or by legitimate inference, encompass the whole business of the appellants, but only the specifically designated items of their properties, whatever actual effect that might have upon their general business as going concerns. This court may not properly assume, it is thought, that the learned trial Judge would have tolerated more onerous execution of the order than its limits described, nor that any complaint thereof by appellants to him would have gone unheard.

(5) It is true this statute did not expressly nor specifically confer upon the district courts the authority to appoint such receivers ex parte and without notice, but it did, by legal presumption and intendment, as already suggested, leave these courts in possession of their pre-existing powers in equity, as well as in the law, so enriched by the addition of Article 4646b, the expressed objective of which was to protect the public generally against the then-prevalent business in Texas of habitually loaning money at usurious interest.

(6) That is, without taking anything from the pre-existing jurisdiction of these courts, the Act directly authorized the State to bring such an injunction suit, when, by prior law, it had no such right, as held in Ex Parte Hughes, 133 Tex. 505, 129 S.W. 2d 270.

(7) That the district court, being so left with its pre-existing power to appoint a receiver in a proper case, according to the usages of the courts of equity (Vernon's Texas Civil Statutes, Article 2293, Section 4), the allegations of the State's petition in this suit therefor were in all material respects sufficient—not only to authorize such an appointment, but further to show that it was reasonably necessary as an aid to the court in the enforcement of any judgment that might thereafter be rendered for the State, and that there was imminent danger of an irreparable injury to the public interest at that time, without the existence of other reasonably sufficient or adequate remedy.

The State's allegations, as so copied in Exhibit A, supra, speak for themselves, detailing in plain language the controlling facts relied upon, without needlessly pleading the evidence depended upon for their support.

Paragraph IV directly so avers that every one of the appellants was not only then in fact engaged in the specific business of habitually loaning money at usurious rates in Texas, but each of them was likewise actually threatening to so continue; paragraph V, in like manner, sets out that everyone of them had also in specified ways followed a course of conduct calculated to conceal such real nature of their business both from the general public and their own clients, and that "all notes, books, papers, records and instruments whatsoever, concerning their said unlawful transactions, respectively, are in the exclusive possession of said defendants, respectively, and the State of Texas has no access to such evidence, and no practical means of examining the same, or even of knowing of the actual existence or contents thereof."

Paragraph VII, in the same factual form, alleges that all of the appellants "have entered into numerous and divers contracts, agreements, and the like, in connection with their said loans, and evidencing in part, if not in whole, their said respective contracts with their borrowers, and that said notes, contracts, agreements and the like instruments, are in the possession of the said defendants, respectively, and the same are being used and enforced by the defendants, respectively, in utter contempt for, and in violation of the said laws of Texas forbidding usury."

Paragraph VIII details the factual conditions under which it is charged that no temporary injunctive relief would have been adequate in this instance.

Instead of being merely impotent conclusions or opinions of the pleader, these discriminatingly drawn charges—since none of them were in fact denied by the appellants, as the trial court found in its order of February 12, 1945, designated in the transcript as "Amended Order Granting Temporary Restraining Order", and, regardless of that, must be in this court taken as true—no reason is perceived for

not holding that they thus disclose an analogous state of facts to those held to sufficiently support the appointment of such a receiver in these authorities: Patton v. State, Tex.Civ.App., 62 S.W.2d 381; Klugsburg v. State, Tex.Civ.App., 89 S.W. 2d 301; Cash v. Ervin, supra.

(8) None of the authorities cited and relied upon by appellants for their contrary contentions are thought to be decisive of the case at bar, hence it becomes unnecessary to review them here; it may not be amiss, however, to point out the inapplicability of two of their leading ones, that is, Stockwell v. State, 110 Tex. 550, 221 S.W. 932, 12 A.L.R. 1116, and Ex Parte Hughes, 133 Tex. 505, 129 S.W.2d 270.

The Austin Court of Civil Appeals, in Watts v. Mann, 187 S.W.2d 917, 927, writ of error refused, is considered to have, in effect, in the course of its discussion of the constitutionality of Article 4646b, so ably differentiated each of these decisions in general meaning from the rationale of the trial court's holding in this instance that these respective excerpts therefrom are quoted with approval as being adversely dispository of the whole question of supporting authority for appellants' contentions herein, to-wit:

"No analogy between the situation there (Stockwell v. State, 110 Tex. 550, 221 S. W. 932, 12 A.L.R. 1116) and that here exists. Here nothing is delegated to the courts or administrative officials. The Act (Article 4646b) specifically denounces the business it defines as habitual practice of money lending usury, expressly declares the public interest in the subject, and provides a specific preventive, injunction against its further practice. It is not essential that the Act should have expressly denominated the practice as a nuisance. The decision in Ex Parte Hughes (133 Tex. 505, 129 S. W.2d 270) is grounded upon the fact that 'there is no law, constitutional or statutory, that defines the violation of such laws as an injury to the property or civil rights of the public at large. To the contrary * * * our usury laws very carefully create only private rights.' "

"That decision was handed down in June, 1939. The Loan Act was passed at the next regular session of the legislature (1943), containing the above-quoted reference to the Hughes decision in its emergency clause."

"The application of the Act (Article 4646b) to money lenders and not to other classes of usurers, is predicated upon an express legislative finding of fact in the emergency clause which reads:

"'The fact that the Supreme Court has recently held (Ex Parte Hughes, 133 Tex. 505, 129 S.W.2d 270), that there is no provision of law authorizing the State of Texas to institute and maintain such a suit as herein authorized by the State of Texas, and the fact disclosed in the prosecution of the suit wherein such opinion was rendered that the usury laws of Texas are being flagrantly violated and unconscionable charges are being made by money lenders, and the fact that such practice is general in many parts of the state, and that the present Statutes of Texas are inadequate to afford protection to the public generally against such unlawful and unconscionable practices, create an emergency,' etc. It can hardly be gainsaid that the factual situation portrayed in this recital afforded ample justification for the Act as applied to this class of usurers. Even were the facts challenged, the legislative finding could not be overturned by the courts unless it were made to appear by conclusive proof that the finding was 'clearly erroneous, arbitrary, or wholly unwarranted.' "

(9) Appellees, on the other hand, frankly conceded that no prior case in Texas has been decided upon the exact equivalent of these facts—that is, in the construction of this new statute; but they rely both upon it and the general power of our courts of equity under our statutes, Article 2293, Section 4, as well as on the usages of the courts of equity elsewhere, such as State v. Bashan, 146 Kan. 181, 70 P.2d 24, by the Supreme Court of Kansas, and these further authorities: 31 Tex.Jur. p. 412; 39 American Jurisprudence, p. 289; Eddy v. Thornton, 205 Ark. 843, 170 S.W.2d 995; Beckwith v. Stratford, 129 Conn. 506, 29 A.2d 775; Kelley v. Clark County, 61 Nev. 293, 127 P.2d 221; Asphalt Products Co. v. Marable, 65 Ga.App. 877, 16 S.W.2d 771; Wilson v. Hotel Co., 188 Ga. 498, 4 S.E. 2d 155, 124 A.L.R. 373; Garraway v. State, 184 Miss. 466, 184 So. 628, 185 So. 803.

(10) Appellants still have their remedy and their "day in court", which simply means a notice of the legal visitation against them, with the opportunity to be heard thereon. 11 Words and Phrases, Perm.Ed., page 119, and cited authorities. Indeed, they had and duly utilized it, pur-

suant to cited R.S. Article 2250, in the court below, in circumstances thus shown by this record: They had first filed a written motion there to vacate the order appointing the receiver now at this bar on this appeal; that would have enabled them to appeal from a refusal of it upon their own pleadings and such evidence as they might have there presented in support of it, but they at once withdrew that motion, and chose rather to appeal directly from the order appointing the receiver ex parte, which, as before pointed out, could only be heard in this court on the State's pleadings.

Furthermore, they may yet go back into this cause in the trial below upon its merits and prove, if they can on the facts, that their business neither was at the time this writ was issued against them, nor has it since been, tainted with the "habitual usury" the State so charged against them.

They were permitted, through a writ of mandamus, entered by this court in cause 11703, Jesse Wilkenfeld et al., Relators, v. Grover Sellers et al., Respondents, on February 20, of 1945, to supersede the interlocutory order herein protested against; so that, pending the disposition of this appeal, none of the designated property has been taken over by the receiver.

(11) Since the State has thus been held competent to maintain this suit under the invoked statute, when the quoted finding of fact in the emergency clause thereof is especially looked to, no reason is perceived for not further holding that it was also the Legislative intent thereby to make the business of habitually loaning money in Texas at usury a public nuisance per se. When given that construction, the authorities declaring such practice may be permanently enjoined are all one way, as those last cited supra make manifest.

Meanwhile, the courts may also, as an aid to such ultimate objective by injunction, reasonably impound through a receiver the means employed in the carrying on of such nefarious business; 36 Texas Jurisprudence, p. 57, par. 24, and footnote cited authorities; Woodward v. Smith, Tex.Civ. App., 253 S.W. 847; Hunt Production Co. v. Burrage, Tex.Civ.App., 104 S.W.2d 84; Griggs v. Brewster, 122 Tex. 588, 62 S.W. 2d 980; Henderson v. Stanley, Tex.Civ. App., 150 S.W.2d 152; Stanley v. Henderson, 139 Tex. 160, 162 S.W.2d 95; Clark on Receivers, 2d Ed., § 191, and § 240; United States v. American Tobacco Co.,

221 U.S. 106, 184–188, 31 S.Ct. 632, 55 L. Ed. 663.

It follows from these conclusions that the judgment should have been affirmed; this protest against the contrary disposition is, with great respect, presented.

On Appellee's Motion for a Rehearing, and in the Alternative to Certify Questions to the Supreme Court.

Motion denied.

GRAVES, Justice (dissenting).

I dissent, under the view that this court—being unwilling to grant the appellee's motion for rehearing—should retain jurisdiction of the appeal before it by withholding a refusal of that motion, and should now grant the appellee's alternative motion to certify to the Supreme Court the question of law raised by the dissent herein, as a matter of right in them, pursuant to Rule 463, Texas Rules of Civil Procedure. Simpson v. McDonald, C. J., 142 Tex. 444, 179 S.W.2d 239; Simpson v. Yarborough, Tex.Civ.App., 176 S.W.2d 761; Akers v. Epperson, Tex.Civ.App., 172 S.W.2d 512; Jaques v. Simms, Tex.Civ.App., 172 S.W. 2d 537.