**GIFFORD v. STATE.**

No. 4702.

Court of Civil Appeals of Texas. El Paso.

Jan. 25, 1950.

Wm. Flournoy, El Paso, Burges, Scott, Rasberry & Hulse, El Paso, for appellant.

Ernest Guinn, County Attorney, El Paso, for appellee.

SUTTON, Justice.

This appeal is from the 41st District Court of El Paso County.

The State brought this suit under the provisions of art. 4646b, Vernon's Civil Stats., against K. P. Gifford, doing business under the trade name Finance Trust Company, and alleged the defendant was engaged in the business of habitually loaning money upon contracts for the use and detention of which usurious interest was charged against and contracted to be paid by the borrower. A large number of transactions were detailed in the petition but on a hearing had evidence was offered as to three transactions. The State sought a temporary injunction and prayed that it be made permanent. At the conclusion of a hearing the trial court granted a temporary injunction from which order this appeal is prosecuted on a supersedeas bond.

The three transactions presented by the evidence involved the sale and purchase of automobiles on part time and in all material respects are identical. In the first transaction the automobile dealer made a price of $995 which was the only price made and which price was paid by the purchaser. This amount was used as the price paid in all transactions had in connection with the sale, including the procurement of insurance, the application for the transfer of title and the payment of the sales tax due, with the exception of one statement in the record where a different amount is named as the time selling price, which will be hereinafter noted. The terms of sale were $395 cash and the remainder of $600 financed through the defendant. The evidence given by the purchaser was that the deferred amount of $600 was financed through the defendant; that he was required to execute a note for $784.20 payable in 12 equal monthly installments of $65.35 each; that an insurance policy was issued to him on the car through the defendant, and that there was prepared at the defendant's office the purchaser's affidavit. The purchaser executed a mortgage to secure an indebtedness to the automobile dealer in the sum of $784.20, payable as provided in said note at the office of the defendant in El Paso, El Paso County, Texas, with interest after maturity at the rate of 6%. At the bottom of the mortgage following the statement, "In Witness Whereof, the mortgagor has hereunto set his hand, etc.", appears the following:

"Statement of Items Covering Purchase.
Cash selling price          $995.00
Time selling price          1179.20
Down payment                 395.00
Unpaid balance               784.20"

There is in the record, offered by the defendant, an instrument described as "Purchaser's Statement", which recites, "For the purpose of securing credit from you in the purchase of the property described, I make the following representations:"

Then follows some personal history as to age, marital status, employment, earnings, etc. which statement is signed by the purchaser. Following the signature is another statement, "Itemized Statement of Sale of Merchandise," bearing the same date as all other instruments, May 3, 1949, and reciting: "I agree to purchase merchandise as described subject to the terms and conditions set forth below:"

Then follows a somewhat lengthy recitation of matters thought not material, but concludes:

"I, the undersigned obligator, (s) purchaser(s) of this property do hereby state: 1. That the installment sale credit extended to me this day as evidenced by this contract, or the one annexed hereto grows out of the purchase, on a time price basis, of the property described below, the amount of such credit being determined in the manner shown: (The description of the car) Appraised Value $643.00 Bk. $550.00.

| 1.  | Cash selling price | | $995.00 **** |
|-----|--------------------|--|--------------|
| 5.  | Total cash selling price | | 995.00 |
| 6.  | Cash payments | | 395.00 **** |
| 9.  | Total down payment | | 395.00 |
| 10. | Deferred balance, Item 5 less 9 | | 600.00 |
| 11. | Sales tax | | 9.95 |
| 12. | Title and transferring | | 10.00 |
| 13. | License | | 11.55 |
| 14. | Total: Item 10 thru 13 | | 31.50 |
| 14. | Amount to be financed | | 631.50 |
| 15. | Fire and Theft Insurance | | 6.00 |
| 17. | Collision (1 yr.) | | 34.00 **** |
| 22. | Total: Item 15 thru 21 | | 40.00 |
| 23. | Total Int. Chg.—Rate | | 112.70 |
| 24. | Total Chgs. 22 and 23 | | 152.70 |
| 25. | Total Amt. Note—14 and 24 | | 784.20 |
| 26. | Down Payment—Item 9 | | 395.00 |
| 27. | Total Time Selling Price, Items 5 and 24 | | 1179.20 |
| 28. | Total cash selling price—Item 5 | | 995.00" |

The manner of payment is then provided for in 12 installments of $65.35.

This last statement purports to have been "Submitted by and payable to" the motor dealer and is signed by the purchaser.

On the same date, May 3, 1949, the defendant paid to the Dealer $550.

The routine followed in the other two transactions were in all material respects the same as the one detailed above. In one the price of the automobile was $450 with a cash payment of $250 and a balance of $200; a note for $292.30 payable in ten installments of $29.23 each and the interest item recited in the Statement is $69.30. In the third the price paid was $295 with a cash payment of $140 and a balance of $155

and a note for $220.50 payable in six installments of $36.75 each and the interest charge was $47.55.

The defendant has four points of error and says the statute is not applicable to the transactions detailed, because it applies to "loans" only, and not to time sales such as these are, because the so-called sales price is a cash price and the total of the items, making up the larger deferred amount, including the items recited as interest charges, is a time sales price and a legitimate commercial transaction.

The trial court filed findings of fact and conclusions of law on request and found in the first transaction before the Court the defendant financed the deferred payment by a loan of $671.50 for which he charged $112.70 interest, so designated, which was usurious within the meaning of art. 4646b, supra. In the second transaction he found the defendant financed a loan of $222 for a usurious interest charge of $69.30. In the last he found a loan financed by the defendant in the amount of $172.95 for an excessive interest charge of $47.55.

So far as the parties are concerned there were three involved in the transactions under consideration, the seller, the buyer and the financing agency. The seller in each instance made but one price as noted and carried forward in all the transactions incident to the completion of the sale and transfer of the motor vehicles in question. The statute, art. 7047K, V.C.S., Sec. 1(a) levies a sales tax on motor vehicles computed at the rate of 1% of the total consideration paid or to be paid, whether such consideration be in the nature of cash, credit or the exchange of property. Sec. 5a provides for an affidavit to be made by the purchaser setting forth the then value in dollars of the total consideration received or to be received by the seller. This affidavit was prepared by the defendant in his office in each of the three instances and recited the prices made by the respective sellers and in no instance was the so-called "Time Selling Price" inserted or considered. How the sums designated as "Time Selling Price" were arrived at we have disclosed by a recitation of the figures and amounts heretofore. The seller in neither instance named a cash price and an alternative credit price.

■ It is true, as contended by the defendant, a vendor of property may fix a cash price and a greater one for time payment without violating the usury statutes, as is held by the cases cited: Rattan v. Commercial Credit Co., Tex.Civ.App., 131 S.W.2d 399 (e. r.); Graham v. Universal Credit Co., Tex.Civ.App., 63 S.W.2d 727; Standard Supply & Hardware Co. v. Christian-Carpenter, Drilling Co., Tex.Civ.App., 183 S.W.2d 657 (e. r.); Gardner v. Associates Inv. Co., Tex.Civ.App., 171 S.W. 2d 381, but these cases differ on the facts from the instant case. "A transaction which is attacked as usurious 'is to be tested by its substance, not its form, and, if from all the facts its essence is found to be the receiving or contracting for a greater rate of interest than is allowed by law, the statutory consequences must be visited upon it.'" Standard Supply v. Christian-Carpenter, [183 S.W.2d 660] supra, quoting Independent Lumber Co. v. Gulf State Bank, Tex. Civ.App., 299 S.W. 939 (e. r.).

But in the instant case there is no occasion to look behind the form for the substance. The sellers made one price which was accepted by the purchasers; the sellers got their price in money, unless it be the first which shows a payment of $550 rather than $600; the amount of the deferred balance; the defendant financed the deferred balances for a stipulated interest charge far in excess of the amount allowed by law, which the purchasers contracted to pay, and the record warrants the inference the amounts have been paid to the defendant.

■ We conclude the evidence amply supports the findings of the trial court and clearly demonstrates a case of usury. Usury having been established it became the province of the court, and the duty, to enjoin such transactions under the Article of the Statute, supra.

The conclusion reached by the trial court is supported by cases cited in the findings and conclusions such as Associates Inv. Co. v. Ligon, Tex.Civ.App., 209 S.W.2d 218; Associates Inv. Co. v. Thomas, Tex.Civ.

App., 210 S.W.2d 413; Associates Inv. Co. v. Baker, Tex.Civ.App., 221 S.W.2d 363; Associates Inv. Co. v. Hill, Tex.Civ.App., 221 S.W.2d 365.

The transactions involved in those cases are not essentially different from those presented in this case. We regard them as correct and authority for the holding hereinbefore made.

■ The defendant says the court erred in granting the temporary injunction, because it granted all the relief that might be had on the final trial and hearing, whereas the purpose of a temporary injunction is to maintain the status quo, and because the statute does not authorize the issuance of a temporary injunction. As has already been suggested the court is only authorized to enjoin the acts complained of when it is determined the law is being violated, but when the violation is established it is the province and duty to restrain it. The status quo is that created by the law which fixes the maximum interest rate and prohibits usury. When usury is practiced the status quo created by the law is destroyed and under the law it becomes the duty of the court to re-establish the status quo and maintain it by prohibiting the violation by the exaction of an unlawful charge. Usury is unlawful and the article here under consideration provides a remedy by injunction to prevent its collection and a temporary injunction is an appropriate remedy. Lambert v. City of Port Arthur, Tex.Civ.App., 22 S.W.2d 320 (e. r.).

While the question was not before the court for decision, it is nevertheless asserted by the court in Wilkenfeld v. State, Tex.Civ.App., 189 S.W.2d 80 at page 83(5) a temporary injunction may properly issue under art. 4646b. We think also such cases as Alpha Petroleum Co. v. Railroad Commission, Tex.Civ.App., 59 S.W.2d 374; McCutchin v. Sun Oil Co., Tex.Civ.App., 139 S.W.2d 848 and McMurrey Refining Co. v. State, Tex.Civ.App., 149 S.W.2d 276 (e. r.) support the above holding.

It is our conclusion the judgment of the trial court is correct and it is affirmed.